STATE INDUSTRIAL INSURANCE SYSTEM, Appellant, v. MARGARET JESCH, Respondent.

No. 15250

November 7, 1985　　　　　　　709 P.2d 172

*Pamela M. Bugge*, General Counsel, Carson City; *Matthew H. Feiertag*, Associate Counsel, Carson City, for Appellant.

*David R. Gamble*, Carson City, for Respondent.

## OPINION

*Per Curiam:*

Robert Jesch was diagnosed as having malignant mesothelioma involving the right lung in March 1982. Mr. Jesch elected surgical intervention, radiation therapy, and chemotherapy. All treatment modalities proved unsuccessful and there was spread of the disease into the opposite lung, and nodes of the neck and scalp. On June 21, 1982, Mr. Jesch died. He was fifty-eight years old at the time of his death. Before his death, Mr. Jesch and his wife were advised by an attending physician to seek disability benefits as his disease was caused by work-related exposure to asbestos fibers. Mrs. Jesch filed a workers' compensation claim with the State Industrial Insurance System (SIIS) against Mr. Jesch's last employer (Ray Heating & Sheet Metal Co.). Her claim was denied by SIIS. Mrs. Jesch appealed the denial of benefits and, after a hearing, the hearing officer affirmed the original determination. Mrs. Jesch again appealed the denial of benefits.

At the hearing before the appeals officer, Mrs. Jesch testified that her husband had been a sheet metal worker for forty years. He had worked in Nevada for all but a couple of months during that time period. Admitted as evidence at the hearing was a list of Mr. Jesch's employers from 1967 through 1971. Also admitted was a note from Mr. Jesch explaining his known exposures to asbestos. Both parties agreed that mesothelioma was a disease with a latency period of twelve to forty years.

The appeals officer found that Mr. Jesch's death was caused by work-related exposure to asbestos which occurred while employed within the State of Nevada. He dismissed Ray Heating & Sheet Metal Co. from the action because Mr. Jesch was not

exposed to asbestos during his ten-year employment there. Concluding that the governing occupational disease statutes must be interpreted to include mesothelioma, the appeals officer reversed the decision of the hearing officer and ordered SIIS to accept and pay widow Jesch's claim. A Petition for Judicial Review was filed by SIIS and the district court affirmed the appeals officer's decision.

We are thus asked to decide whether compensation for mesothelioma is precluded under our occupational disease provisions because of the lengthy latency period of the disease, and whether the last injurious exposure rule governs the procedural requirements of filing such a claim. Because we agree with the lower court's decision that mesothelioma is a compensable occupational disease and that the last injurious exposure rule applies to such successive-employer claims, we affirm.

## *ASBESTOS EXPOSURE*

Asbestos is a mineral fiber which has been used extensively in industry and the home. Over 3,000 products contain asbestos. S. Kusnetz and M. Hutchison, *A Guide to the Work-Relatedness of Disease* 54 (1979). Asbestos exposure has been proved to result in a number of disabling and fatal diseases. Among these diseases are lung cancer, cancer of the mesothelial lining of the chest and abdominal cavities, and asbestosis. Asbestos exposure has also been linked epidemiologically to gastrointestinal cancers.

There are long latency periods associated with the asbestos-related diseases. Asbestos-induced lung cancer usually involves a latency period of greater than twenty years. Mesothelioma generally involves a latency period of at least twenty-five to thirty years. Some cases of mesothelioma have not manifested for more than forty years from the exposure to asbestos.

Malignant mesotheliomas are almost always fatal within the year following diagnosis. Treatment modalities rarely produce a cure. It is also extremely rare to observe malignant mesothelioma in persons not exposed to asbestos. The diagnosis of occupational mesothelioma is based on meeting the following criteria: (1) confirmed history of occupational exposure to asbestos (2) pathological evidence of mesothelioma. *Id.* at 62. The concern for workers exposed to asbestos is perhaps best reflected by the Occupational Safety and Health Administration (OSHA): "OSHA is aware of no instances in which exposure to a toxic substance has more clearly demonstrated detrimental health effects on humans than has asbestos exposure. The diseases caused by asbestos exposure are in large part life-threatening or disabling." Occupational Exposure to Asbestos, 48 Fed. Reg. 215, 51089 (1983) (codified at 29 C.F.R. § 1910.1001 at 660-65).

Dr. William J. Nicholson of Mt. Sinai School of Medicine (Environmental Sciences Laboratory) testified before the Senate Labor and Human Resources Subcommittee on Labor on April 24, 1984. He reported that the annual death toll from asbestos-related *cancers* are expected to rise to approximately 10,000 by the year 2000. He further reported that an estimated 27,500,000 workers were exposed to asbestos between 1940 and 1980. An estimated 350,000 deaths will be related to that exposure period. *Employment Safety and Health Guide,* No. 678-Part I, May 8, 1984 (CCH). It is evident that asbestos-related diseases will be a major problem for a number of years to come.

## STATUTORY INTERPRETATION

Mrs. Jesch seeks to recover death benefits under Nevada's Occupational Disease Act. NRS 617.470 of that Act governs occupational diseases of the respiratory tract resulting from dusts. It provides:

> All conditions, restrictions, limitations and other provisions of NRS 617.460 with reference to the payment of compensation or benefits on account of silicosis shall be applicable to the payment of compensation or benefits on account of any other occupational disease of the respiratory tract resulting from injurious exposure to dusts.[1]

NRS 617.460(4), however, restricts recovery for respiratory tract diseases by limiting the time period in which compensation from such respiratory tract diseases can be claimed. It states:

> No compensation may be paid in case of silicosis unless, *during the 10 years immediately preceding the disablement or death,* the injured employee has been exposed to harmful quantities of silicon dioxide dust for not less than 3 years in employment in Nevada covered by the insurer. (Emphasis added.)

A narrow reading of the foregoing statutes, then, would preclude compensation in all claims of asbestos-related cancers (including mesothelioma) and most claims of asbestosis due to the lengthy latency periods involved with these diseases.

It has been conceded by SIIS that Mr. Jesch suffered and died from an occupational disease possessing a lengthy latency period. Strict statutory interpretation would preclude recovery of benefits by his widow.

Our workers' compensation laws reveal that the primary purpose is to provide economic assistance to persons who suffer

---

[1] Although the mesothelioma suffered by Mr. Jesch primarily involved the chest cavity and could be deemed a respiratory disease, as noted earlier, this disease also affects the abdominal cavity.

disability or death as a result of their employment. This court has a long-standing policy of liberally construing these laws to protect workers and their families. Hansen v. Harrah's, 100 Nev. 60, 675 P.2d 394, 396 (1984). There are strong public policy reasons to support such a position.

> Unquestionably, compensation laws were enacted as a humanitarian measure. The modern trend is to construe the industrial insurance acts broadly and liberally, to protect the interest of the injured worker and his dependents. A reasonable, liberal and practical construction is preferable to a narrow one, since these acts are enacted for the purpose of giving compensation, not for the denial thereof.

*Id.* at 63 *citing* Nevada Industrial Commission v. Peck, 69 Nev. 1, 10-11, 239 P.2d 244, 248 (1952).

It is necessary for the legislature's goals and overall objectives of the Occupational Disease Act to be met. It has been noted by this court that statutory interpretation should not yield an unreasonable result if a more reasonable result is available. Sheriff v. Smith, 91 Nev. 729, 733, 542 P.2d 440, 443 (1975); Cragun v. Nevada Pub. Employees' Ret. Bd., 92 Nev. 202, 205, 547 P.2d 1356, 1358 (1976) *citing* Penrose v. Whitacre, 61 Nev. 440, 455, 132 P.2d 609, 616 (1942).

Since the purpose of the Occupational Disease Act is to compensate workers for work-related illness or injury, the exclusion of Mrs. Jesch's claim would be inconsistent with its basic intent. The legislative desire was to provide for workers. Mr. Jesch worked most of his life in Nevada and died from mesothelioma. Mr. Jesch provided a list of his employers to SIIS and pinpointed his known exposures to asbestos. It is undisputed that mesothelioma is an asbestos-related disease with a lengthy latency period. The legislature could not have intended to exclude Mrs. Jesch's claim for benefits. *See* Welfare Div. v. Washoe Co. Welfare Dep't, 88 Nev. 635, 637-38, 503 P.2d 457, 459 (1972) (citations omitted); Ex Parte Iratacable, 55 Nev. 263, 282, 30 P.2d 284, 290 (1934) (citation omitted); Donoghue v. Tonopah Oriental Mining Co., 45 Nev. 110, 116-17, 198 P. 553, 554 (1921).

We feel it is also necessary to examine the purposes which statutes of limitations are designed to serve. It is generally agreed that there exist three purposes. First, there is an evidentiary purpose. The desire is to reduce the likelihood of error or fraud that may occur when evaluating factual matters occurring many years before. Memories fade, witnesses disappear, and evidence may be lost. Second, there is a desire to assure a potential defendant that he will not be liable under the law for an indefinite period of time. Third, there is a desire to discourage prospective claimants from "sleeping on their rights." *E.g.*, P. Barth with H.

Hunt, *Workers' Compensation and Work-Related Illnesses and Disease* 120 (1980).

When evaluating the traditional purposes of statutes of limitations, it is observed that the evidentiary problems frequently encountered with "stale" cases are not as likely to occur when dealing with asbestos-related claims. Asbestos-related evidence is not rendered unreliable with the passage of time. In fact, the necessary evidence to prove the claim develops over a period of time (i.e. the physical manifestations of the asbestos-related disease). Once asbestos fibers are inhaled into the lungs, they remain there and can be substantiated clinically. The likelihood of error or fraud in establishing an asbestos-related claim is therefore unlikely. 52 U.Cin.L.Rev. 239, 244 n. 36 (1983).

There also is a legitimate interest in providing a potential defendant with certainty regarding potential liability. But it is necessary to balance the potential defendant's interest in a desire for certainty against the interests of a disabled worker who could not discover his disability. Such a situation requires that the interest of the potential defendant give way to the worker's right to a remedy. *Id.* at 247 and n. 64.

In sum, the goal of the Occupational Disease Act is to provide compensation for work-related illness or injury. After consideration of legislative intent and this court's past construction of workers' compensation statutes, we believe the limitations imposed by NRS 617.460 and 617.470 were not intended to preclude recovery for some one in the position of Mrs. Jesch.[2]

### PROCEDURAL COMPLIANCE: THE LAST INJURIOUS EXPOSURE RULE

Mrs. Jesch's claim was denied because she was unable to name a specific employer responsible for the asbestos exposure resulting in the mesothelioma. SIIS was provided a list of Mr. Jesch's employers from 1967 through 1971 along with information from Mr. Jesch concerning his exposures to asbestos during the 1940's and 1950's. It is unclear as to whether SIIS has a complete list of Mr. Jesch's employers from 1942 until 1967.

---

[2]If the legislature believes some limitation is necessary, it may, of course, impose such a statute. There are those who advocate that the most rational response to latent disease claims is the rule that the cause of action does not accrue until the claimant becomes aware of the disease or should have become aware of the disease. This would forestall the injustice that would result from barring a claim before it is known to exist. Osteen v. A.C. & S., Inc., 307 N.W.2d 514, 517 (Neb. 1981) *citing* Hauff v. Kimball, 77 N.W.2d 683, 687 (1956); Comment, *Asbestosis: Who Will Pay the Plaintiff?* 57 Tul.L.Rev. 1491, 1493, 1499 (1983); *See* Urie v. Thompson, 337 U.S. 163, 169-70 (1949); Cf. State Farm Fire and Cas. v. All Elec., Inc., 99 Nev. 222, 660 P.2d 995 (1983).

The Nevada Occupational Disease Act provides no authority to govern this particular procedural problem. The district court, however, determined that utilization of the last injurious exposure rule to Mrs. Jesch's claim resolves the procedural complications which disturb the SIIS.

Simply stated, the last injurious exposure rule in occupational disease, successive-employer cases "places full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability." 4 A. Larson, *The Law of Workmen's Compensation* § 95.20 (1984). A majority of jurisdictions have adopted the rule in successive-employer occupational disease cases either by statutory or judicial action. *Id.*

In an asbestos-related case it could be a tremendous initial task to discover all the employers responsible for the occupational disease. Then it would be necessary to attempt to apportion the amount of exposure which occurred with each employer. A state's workers compensation agency would be excessively burdened and the claimant would suffer a delay in payment of benefits. Larson, *supra,* at § 95.24. Just such problems prompted the Nebraska Supreme Court to adopt the last injurious exposure rule in asbestos-related cases. The court quoted from an earlier Tennessee case: "[W]e are constrained to so interpret our Workmen's Compensation Law as will best serve the interests of employees who suffer from an occupational disease, rather than attempt an adjustment of their rights in the light of equities that may exist between [successive employers]." Osteen v. A.C. & S., Inc., 307 N.W.2d 514, 519 (1981) *quoting* Wilson v. Van Buren County, 278 S.W.2d 685, 688 (Tenn. 1955).

In response to the argument that it is unfair for one employer to bear the burden of compensation for a disease to which other employers contributed, the Nebraska Supreme Court responded: "[E]ven though liability imposed under this rule can have a harsh result, there will be a spreading of the risk when the total picture of asbestos litigation is considered on a national basis." 307 N.W.2d at 520; *See also* Boise Cascade Corp. v. Starbuck, 675 P.2d 1044, 1046 (Or. 1984); Matter of Compensation of Brache, 646 P.2d 1330, 1336-37 (Or. 1982).

For the reasons elucidated above, we agree that the last injurious exposure rule provides the most efficient and reasonable means of establishing liability in successive-employer, occupational disease cases. Since it has been concluded that Mr. Jesch worked most of his life in Nevada, his last in-state employer bearing a causal relationship to the diagnosis of mesothelioma will assume responsibility for compensation.

Utilizing the last injurious exposure rule does not, however,

resolve the claim by SIIS that Mrs. Jesch failed to name the last responsible employer. The Oregon Supreme Court considered the procedural difficulties encountered when filing a claim involving an insidious disease. In Inkley v. Forest Fiber Products Co., 605 P.2d 1175 (Or. 1980), the court adopted the last injurious exposure rule and concluded that a disabled worker need not meet the often impossible burden of showing that the workplace conditions at a specific time and place caused his disability. 605 P.2d at 1178. "The [last injurious exposure] rule requires the claimant to show only that the employment environment during the relevant period *could have* been a contributory cause of the disease." *Id.* The procedural inequities facing the disabled claimant without application of this rule were aptly stated by the Oregon Supreme Court:

> When only one employer is involved, the claimant must show a causal relationship between workplace conditions and his illness. In the multiple employer situation, however, such a "causality rule" would expose the claimant to the risk of no recovery, if his initial judgment as to which job had the strongest causal relation to his illness proved faulty.

605 P.2d at 1178 (footnote omitted).

Refining its application of this rule, the Oregon Supreme Court considered a case involving a worker with mesothelioma. Matter of Compensation of Fossum, 646 P.2d 1337 (Or. 1982). The court noted that the last injurious exposure rule involves two issues: liability in successive-employer cases and proof of actual causation. 646 P.2d at 1340. The court recognized that the worker was exposed to asbestos over a twenty to forty-year period and each employment environment may have contributed to his disease. *Id.* The worker had proved that at least one of his employers caused the disease, even though he could not prove which one. *Id.* The court determined that the issue was *not* which employment caused the disease, but which employment involved conditions which *could have caused* it. *Id.* Such is precisely the case with Jesch's claim.

We agree with the approach taken by these and other courts, for, without application of the last injurious exposure rule, we would require of Mrs. Jesch "proof of the unprovable and litigation of the unlitigable." *Osteen* at 520 *citing* Holden v. Williamette Industries, Inc., 560 P.2d 298, 301 (Or.App. 1977).

Applied to her claim for death benefits, the last injurious exposure rule provides Mrs. Jesch access to the system. She is not required to prove that any *one* employment resulted in her

husband's fatal disease. Her burden of proof has been met by establishing that the disease was work-related.

Under the last injurious exposure rule, then, the last in-state employer for whom Mr. Jesch worked, who bears a causal relationship to the disease, is the responsible employer. Once the worker presents substantial evidence of successive-employer work-related disability, a prima facie case for recovery is established. The last injurious employer can then present evidence to show that the disability is with another employer or that the disability is unrelated to employment. The trier of fact will evaluate the evidence and render a decision.

It is hereby ordered that SIIS should conduct a hearing to determine the employer responsible under the last injurious exposure rule. Mrs. Jesch is responsible for providing a complete list of her late husband's employers as there is no dispute that mesothelioma is an occupational disease.

Accordingly, we affirm in part, and we remand with instructions that the district court shall direct a determination of the last responsible employer.

SPRINGER, C. J., and MOWBRAY, GUNDERSON, and STEFFEN, JJ., and ZENOFF, SR. J.,[3] concur.