COLLETT ELECTRIC, Appellant, v. WILLIAM DUBOVIK and the STATE INDUSTRIAL INSURANCE SYSTEM, an Agency of the State of Nevada, Respondents.

No. 26303

February 29, 1996          911 P.2d 1192

*McGroarty, Cartwright & Lane,* for Appellant.

*King, Gross & Sutcliffe Ltd.,* Las Vegas, for Respondent Dubovik.

*Lenard Ormsby,* General Counsel, and *Shirley D. Lindsey,* Associate General Counsel, Carson City, for Respondent State Industrial Insurance System.

## OPINION

*Per Curiam:*

Respondent William Dubovik worked for appellant Collett Electric (Collett) for over five years, first as an electrician and then as a foreman. Dubovik experienced problems on the job with his right hand before he stopped working for Collett, but he did not go to a doctor or file an industrial insurance claim. About six weeks after leaving Collett and starting his own electrical contracting business, Dubovik's hand worsened, prompting him to see a doctor and file an industrial insurance claim for cumulative trauma nerve entrapment syndrome.

Both the State Industrial Insurance System (SIIS) and a hearing officer accepted the claim, but determined that Dubovik's own business would be charged for his disability benefits. An appeals officer reversed this determination, charging Collett instead, and the district court denied Collett's and SIIS's petition for judicial review.

We conclude that the appeals officer erred as a matter of law. We therefore reverse the district court's order and remand, directing that the decision of the hearing officer be reinstated.

### FACTS

Respondent Dubovik began working for appellant Collett around late 1986 as a journeyman electrician. He became a working foreman about six months later. Dubovik worked for Collett until the end of September 1992. At that time, he obtained his electrical contractor's license and left to start his own business, Aggressive Electric (Aggressive).

While still with Collett, Dubovik was a foreman on a construction site in Mesquite from May 1991 until January 1992. He

testified that he not only supervised but also worked with his tools about eighty or ninety percent of the time. He first noticed numbness in three fingers of his right hand at that time, especially when it was cold. It became a problem toward the end of that job for Dubovik to perform tasks like using wire cutters or screwdrivers. He did not report the condition to a doctor or to Collett at that time. After the Mesquite job was finished, Dubovik worked for Collett in Las Vegas at another construction site for several months until he started his own business. The problems with his hand continued.

Dubovik did basically the same type of work for his own company, Aggressive, except the jobs were at residential rather than commercial sites. He went to see Dr. David Toeller on November 11, 1992, because the condition of his fingers made it unbearable to work. He was outside in the cold more than he had been at the commercial job sites. As a foreman for Collett, Dubovik had been able to stop a task when it became a problem, do something else, and finish the task later when he could. Working at the first job for Aggressive, he worked eight hours a day with his hands. About three or four weeks after beginning this job, he went to see the doctor.

Dubovik's co-worker at the Mesquite job testified that Dubovik occasionally complained of numbness and stiffness in his hand at that time. In a letter dated February 12, 1993, Dr. Toeller wrote that Dubovik

> reports his symptoms came on over a year before I saw him. He gave me persuasive examples of how his job required him to use tools only occasionally and it was during those times and during those periods when he would notice symptoms.
>
> It appears as though he had a worsening of his symptoms after he went to work for Aggressive Electric, but the symptoms clearly began while he was working for his prior employer.
>
> The type of problem we are dealing with is a cumulative trauma nerve entrapment syndrome. It would be highly unlikely for a person to develop cumulative trauma in this short period of time between 10/26/92 and 11/12/92[1] when I saw the patient. It is much more medically reasonable to attribute his present nerve entrapment syndrome to his prior employer.

Dubovik filed a claim for workers compensation benefits on November 11, 1992, listing Collett as his employer. SIIS investigated the claim, and the investigator's report stated that Dubovik

---

[1]The correct date appears to be November 11, 1992.

indicated that he never notified the employer of any problems he was experiencing and had no problem working as a Foreman for Collett Electric. The periodic numbness and soreness in his wrist only occurred when he was forced, because of an incomplete crew, to work as an Electrician.

. . . .

[Dubovik started his own] business full time when he left Collett Electric and indicates to this Investigator that though the symptoms he was experiencing started when he worked for Collett Electric they are becoming increasingly more serious over the last thirty (30) days (from October 2, 1992 to November 11, 1992). He contributes [sic] this to physically performing the work on a daily basis rather than supervising as he did at Collett.

SIIS then advised Dubovik that it accepted liability for his claim, but that the claim would be charged to Aggressive's account. Dubovik appealed this decision to charge Aggressive, but a hearing officer affirmed the SIIS decision. Dubovik appealed again, and an appeals officer reversed the hearing officer's decision and ordered that Collett's account be charged. Both SIIS and Collett filed petitions for judicial review, and these petitions were consolidated. The district court denied the petition on August 15, 1994.

Collett has appealed. Although named as a respondent, SIIS also urges this court to reverse the appeals officer and the district court.

## DISCUSSION

The function of this court in reviewing an administrative decision is identical to the district court's. Titanium Metals Corp. v. Clark County, 99 Nev. 397, 399, 663 P.2d 355, 357 (1983). A reviewing court shall not substitute its judgment for that of an agency in regard to a question of fact. NRS 233B.135(3). The standard for such review is whether the agency's decision was clearly erroneous or an arbitrary abuse of discretion. NRS 233B.135(3)(e) and (f). However, questions of law are reviewed de novo. SIIS v. United Exposition Services Co., 109 Nev. 28, 30, 846 P.2d 294, 295 (1993). We conclude that the appeals officer misconstrued Nevada law in reaching her decision and erred as a matter of law.

The appeals officer's decision and order stated: "The presumption that the primary cause of Mr. Dubovik's disease was the last employer, Aggressive Electric, has been rebutted by medical

evidence, indicating that the primary cause of Mr. Dubovik's disease was his prior employment with Collett Electric." The decision cited SIIS v. Jesch, 101 Nev. 690, 709 P.2d 172 (1985), where this court adopted the last injurious exposure rule for successive-employer cases like this one. However, the last injurious exposure rule forestalls any determination regarding which employment was the "primary cause" of a work-related disease or injury.

> [T]he last injurious exposure rule in occupational disease, successive-employer cases "places full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability." 4 A. Larson, *The Law of Workmen's Compensation* § 95.20 (1984).

*Jesch,* 101 Nev. at 696, 709 P.2d at 176. Though this rule may sometimes produce harsh results for an employer, this court concluded that it serves the best interests of employees, avoids the difficulties of attempting to apportion responsibility between successive employers in particular cases, and spreads the risks between employers overall. *Id.*

The appeals officer's decision quoted the following passage from *Jesch.*

> Under the last injurious exposure rule, then, the last in-state employer for whom Mr. Jesch worked, who bears a causal relationship to the disease, is the responsible employer. Once the worker presents substantial evidence of successive-employer work-related disability, a prima facie case for recovery is established. The last injurious employer can then present evidence *to show that the disability is with another employer* or that the disability is unrelated to employment. The trier of fact will evaluate the evidence and render a decision.

*Id.* at 698, 709 P.2d at 177-78 (emphasis added).

Dubovik argues that the emphasized language shows that this court wished to adopt a minority version of the rule which requires "that in order to impose liability on the insurer who was last at risk, the exposure during its period of risk must have been of such length or degree that it could have *actually* caused the disease." 4 A. Larson, The Law of Workmen's Compensation § 95.26(a) (1995). We disagree. Dubovik points to no other language in *Jesch* or in other opinions of this court to support such a reading; on the contrary, such a reading would not be consistent with the rest of *Jesch* or other opinions. In context, the unartful language in question means that an employer has the opportunity to show that its workplace environment could not have been even " 'a contributory cause of the disease.' " *Jesch,* 101 Nev. at 697,

709 P.2d at 177 (quoting Inkley v. Forest Fiber Products Co., 605 P.2d 1175, 1178 (Or. 1980)).

This court has recognized that some injuries do not fall within the last injurious exposure rule. SIIS v. Swinney, 103 Nev. 17, 731 P.2d 359 (1987). The appeals officer considered Dubovik's condition to be a disease, not an injury, and did not apply *Swinney*. The parties appear to agree with characterizing the disability as a disease. This characterization should not make a difference anyway because the last injurious exposure rule includes both successive injury cases and occupational disease cases. *Swinney*, 103 Nev. at 19, 731 P.2d at 361.

In regard to injuries, the rule remains: "Full liability is placed upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability." *Id.*, 731 P.2d at 360. Injuries are categorized in three ways: new injuries, aggravations of a prior injury, and recurrences. *Id.*, 731 P.2d at 361.

> [T]he employer/insurer at the time of [a new injury or aggravation of a prior injury] is liable for all the claimant's benefits even if the second injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed to the final condition.

*Id.* at 19-20, 731 P.2d at 361.

> However, if the second injury is merely a recurrence of the first, and does not contribute even slightly to the causation of the disabling condition, the insurer/ employer covering the risk at the time of the original injury remains liable for the second.

*Id.* at 20, 731 P.2d at 361.

Even if Dubovik's disability were viewed as an injury, it could not be considered a recurrence. The evidence clearly showed that Dubovik's employment with Aggressive contributed significantly to the causation of his disabling condition. Thus, whether Dubovik's disability results from disease or injury, the last injurious exposure rule places responsibility for payment of his benefits with Aggressive.[2]

---

[2]In light of this conclusion, we do not need to address Collett's other arguments.

## CONCLUSION

The appeals officer failed to properly apply the last injurious exposure rule. Dubovik's employment with Aggressive was the last employment that bore a causal relationship to his disability. Thus, Aggressive is responsible for payment of Dubovik's disability benefits. We therefore reverse the district court's order and remand for reinstatement of the decision of the hearing officer charging liability for the disability benefits to Aggressive.