*1026
 
 OPINION
 

 Per Curiam:
 

 Febe Gothro (Gothro) worked full-time for appellant Riverboat Hotel Casino (Riverboat) dealing double-deck blackjack and part-time with respondent Harold’s Club dealing single-deck blackjack. While working for both Riverboat and Harold’s Club, Gothro began to experience work-related pain in her left wrist. She filed a notice of injury with Riverboat in July, 1993; however, she did not seek medical treatment until March, 1994, when she filed claims for compensation with Riverboat, Harold’s Club, and the State Industrial Insurance System (SIIS). Her claims were denied, and she requested a hearing. A hearing officer affirmed Harold’s Club and SIIS’s denial of Gothro’s claims, but reversed Riverboat’s determination, ordering it to assume full responsibility for Gothro’s claim. An appeals officer affirmed the hearing officer’s decision. Riverboat petitioned the district court for judicial review; the district court denied Riverboat’s petition and affirmed the appeals officer’s decision. We conclude that the appeal’s officer erred and that liability for Gothro’s claim should have been apportioned between Riverboat and Harold’s Club on the basis of each employer’s responsibility for wages.
 

 FACTS
 

 On October 11, 1992, Gothro began working full-time (forty hours per week) for Riverboat dealing double-deck blackjack. On April 20, 1993, Gothro also began dealing single-deck blackjack part-time (twenty-four to thirty-two hours per week) at Harold’s Club, working three or four eight-hour shifts a week. In July of 1993, Gothro filed an injury report with Riverboat, complaining of pain in her left wrist. The report was forwarded to SIIS, which was Riverboat’s industrial insurer in July, 1993. Gothro did not seek medical treatment at this time. On March 7, 1994, Gothro filed another injury/occupational disease report with Riverboat, complaining of pain in both wrists and the backs of her hands. By this time, Riverboat had become self-insured.
 
 [1]
 
 That same day,
 
 *1027
 
 Gothro sought medical care for her condition. Dr. Lex Simpson found that she had tendinitis caused by repetitive use in dealing and shuffling cards and completed a “C-4” form for submission to SIIS. On March 29, 1994, Gothro filed a claim with SIIS asking it to “reopen” her case. On April 19, 1994, Gothro’s attorney asked SIIS to determine the compensability of her claim. On June 15, 1994, SIIS responded that since no claim had been filed with SIIS while it had insured Riverboat (SIIS had only received an injury notice in July, 1993), it could not render a determination.
 

 Meanwhile, on May 5, 1994, Gothro filed an injury report with Harold’s Club, after presenting Dr. Simpson’s diagnosis to a Harold’s Club supervisor in April, 1994. In the report, Gothro claimed that she had attempted to file an injury report with her pit boss and various supervisors in July, 1993, but had been “refused.” However, Gothro testified before the appeals officer that she did not talk to anyone at Harold’s Club about her injuries until December, 1993. In December, 1993, Gothro complained to a Harold’s Club pitboss, Linda Limbrada, and several supervisors that her “hands hurt.” Limbrada asked Gothro if she had injured her hands/wrists at work. Gothro said “no” because she did not know if the pain had been caused by the job. Allegedly, Limbrada then stated that since the injury was not work-related, a report could not be filed. Gothro testified that she had thought that Limbrada was asking her whether she had had an accident at work, like dropping something on her hands or slamming them in a door, and that was why Gothro said that her injury was not job related. On May 23, 1994, Harold’s Club denied Gothro’s claim as “a preexisting condition due to [her] primary employment with the Riverboat Hotel & Casino,” citing the fact that she had first filed an injury report with Riverboat, and not Harold’s Club, in July, 1993 — two months after starting work at Harold’s Club.
 

 On June 9, 1994, another physician, Dr. Steven Atcheson, sent a letter to Riverboat’s insurance administrator, Nevada Administrators. In the letter, Dr. Atcheson confirmed Dr. Simpson’s diagnosis of industrially caused use-related hand and wrist pain. Of interest, Dr. Atcheson also stated the following:
 

 [Gothro] is working what sounds like almost two full time jobs dealing twenty-one and I think I would be rather stunned if she did not have some degree of hand and wrist pain.
 

 I do believe that she can continue in her current position as a double deck twenty-one dealer, but that is going to cause her more pain than dealing single deck.
 

 
 *1028
 

 It is impossible for me to state which job is the more proximate cause of her current discomfort. I would guess that both are about equally involved in contributing to her pain, excepting that shuffling the double deck is more painful to her than the single deck.
 

 (Emphasis added.)
 

 In an earlier letter sent to Riverboat’s attorney, Dr. Atcheson stated, among other things:
 

 I believe that [Gothro’s] pain has arisen as a result of working two separate jobs as a dealer. ... I cannot state which job contributed more to her symptoms. /
 
 would note that she did not have any symptoms of hand pain when she was working a single 40-hour per week job. . . .
 
 Her symptoms apparently did not arise until her dual employment commenced.
 

 (Emphasis added.) Notwithstanding Dr. Atcheson’s correspondence, on June 20, 1994, Riverboat denied Gothro’s claim as untimely because she had reported the injury in July, 1993, but did not seek medical treatment until March 7, 1994.
 

 Gothro timely filed an appeal of SIIS’s, Harold’s Club’s, and Riverboat’s determinations to deny coverage. According to Gothro, she quit working for Harold’s club in August, 1994, due to the pain in her hands and wrists; she continued working full-time for Riverboat. On August 4, 1994, a hearing officer affirmed SIIS’s and Harold’s Club’s denial of Gothro’s claims,
 
 [2]
 
 but reversed Riverboat’s determination, finding that Gothro’s “job duties performed at [Riverboat] proximately caused the bilateral overuse syndrome.” There was no specific determination as to whether Gothro’s condition preexisted her employment with Harold’s Club.
 

 On March 24, 1995, an appeals officer affirmed the hearing officer’s decision. The appeals officer noted that all parties agreed that Gothro’s injury was “industrially caused.” Before the appeals officer, Riverboat argued that Harold’s Club bore sole responsibility for Gothro’s condition pursuant to the “last injurious exposure rule.” Alternatively, Riverboat contended that if it was at all responsible for Gothro’s claim, such responsibility arose in July, 1993 (when Gothro first filed a notice of injury but did not seek medical treatment), when Riverboat was still insured by SIIS.
 

 In its findings of fact, the appeals officer stated:
 

 
 *1029
 
 [T]here is no medical reporting which supports finding either Harolds Club [sic] or the Riverboat primarily responsible for claimant’s condition and the hypothesis that double-deck dealing at the Riverboat was more causative than single-deck dealing at Harolds Club [sic] or that claimant did not suffer problems until she undertook employment beyond the standard 40-hour work weeks is just that — hypothesis by counsel which expert physician[s] are unwilling to make.
 

 (Footnote omitted.) The appeals officer concluded that pursuant to the last injurious exposure rule, Riverboat was solely responsible for Gothro’s claim and that the date of the claim (March 7, 1994) rather than the date of her first report of injury (July 12, 1993) was determinative. Accordingly, the appeals officer ordered Riverboat, as a self-insured employer, to assume full responsibility for Gothro’s claim.
 

 On June 6, 1995, Riverboat petitioned the district court for judicial review. The district court denied Riverboat’s petition and affirmed the appeals officer’s decision. On appeal to this court, Riverboat argues that the appeals officer erred in concluding that under the last injurious exposure rule it, and not Harold’s Club, was responsible for Gothro’s industrially-caused condition. Riverboat asserts that the appeals officer’s finding that there was not any medical evidence to support the position that Gothro did not suffer any symptoms until she began working two jobs was not supported by substantial evidence in the record. In the alternative, Riverboat asserts that, because this case involved concurrent rather than successive employers, the appeals officer abused her discretion by failing to apportion liability for Gothro’s industrial injury between Riverboat and Harold’s Club.
 
 [3]
 

 DISCUSSION
 

 The function of this court in reviewing an administrative decision is identical to the district court’s. A reviewing court shall not substitute its judgment for that of an agency in regard to a question of fact. The standard for such review is whether the agency’s decision was clearly erroneous or an arbitrary abuse of discretion. However, questions of law are reviewed de novo. Collett Electric v. Dubovik, 112 Nev. 193, 196, 911 P.2d 1192, 1195 (1996).
 

 The last injurious exposure rule is a judicial creation which
 
 *1030
 
 provides a means of assigning liability when two successive employers are both potentially liable for a claimant’s injury or occupational disease. The rule states: “Full liability is placed upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.” SIIS v. Swinney, 103 Nev. 17, 19, 731 P.2d 359, 360 (1987). Application of the rule “forestalls any determination regarding which employment was the ‘primary cause’ of a work-related disease or injury.”
 
 Collett,
 
 112 Nev. at 197, 911 P.2d at 1195.
 

 In the instant case, the appeals officer concluded that the rule conferred full responsibility on Riverboat as Gothro’s “last employer-insurer-carrier ... at the time of ‘the most recent injury that bears a causal relationship to the disability.’ ” However, the last injurious exposure rule has previously been applied only in the context of successive employer cases.
 
 See, e.g.,
 
 SIIS v. Jesch, 101 Nev. 690, 696, 709 P.2d 172, 176 (1985). The instant situation is distinguishable in that the injury arose during simultaneous or concurrent employment; on the date of Gothro’s “most recent injury,” Gothro was working forty hours per week with Riverboat while simultaneously working twenty-four to thirty-two hours per week with Harold’s Club.
 

 We conclude that the last injurious exposure rule is not applicable in the concurrent employment context. In Colwell v. Trotman, 615 P.2d 1094, 1096 (Or. Ct. App. 1980), the court reasoned:
 

 [T]he last injurious exposure rule was judicially created . . . ; it represents a policy decision to place responsibility for compensation upon an identifiable employer rather than placing disabled workers in the untenable position of proving which of two or more equally likely possibilities is true and/or of being barred by limitation periods from recovering compensation because an occupational disease
 
 may
 
 have been contracted in the service of a prior employer.
 
 The rule makes complete sense in the context of successive employments which contribute to an occupational disease; it makes little sense in the present context, where the worker was exposed to conditions which contributed to her occupational disease in two separate but simultaneous employments.
 

 (Emphasis added.)
 

 Although Riverboat and Harold’s Club each argue that if the last injurious exposure rule applies it places full liability on the other, we conclude that it was error for the appeals officer to apply the rule in this situation. Here, the injury occurred while Gothro was simultaneously working forty hours per week for
 
 *1031
 
 Riverboat and twenty-four to thirty-two hours per week for Harold’s Club, performing a job at both places that could have caused her hand and wrist problems.
 

 We further conclude that apportionment of responsibility is the most equitable way to deal with concurrent employment situations. It appears from the record that Gothro probably would not have injured her wrists had she just worked forty hours for the Riverboat or twenty-four to thirty-two hours per week at Harold’s Club. Her condition was a result of overuse, and it manifested itself while she was working sixty-four to seventy-two hours per week dealing cards for two employers.
 

 There is case law from other states in support of apportionment in concurrent employment scenarios. In
 
 Colwell,
 
 a dental hygienist worked for one dentist on Tuesdays of each week, and worked Wednesdays, Thursdays, and Fridays of each week for a second dentist. While working for both dentists, she developed a work-related condition in her elbow, which necessitated her quitting both positions.
 
 Id.
 
 She made claims against both dentists; the Wednesday through Friday employer accepted her claim, but the Tuesday employer denied her claim.
 
 Id.
 
 A referee upheld the Tuesday employer’s determination, stating that although the hygienist’s condition was contributed to by both employments, her last work day had been for the Wednesday through Friday employer, and thus, the last injurious exposure rule was applicable, placing full liability on that employer.
 
 Id.
 
 The referee apparently adopted an argument almost identical to Harold’s Club’s contention that Riverboat continued to employ Gothro after she quit working for Harold’s Club, and was thereby her “last” employer.
 

 On appeal, the court reversed the referee’s determination and concluded that apportionment was not precluded in this concurrent employment situation.
 
 Id.
 
 at 1097. However, the court did not consider how liability should be apportioned between both employers and remanded that issue to the Workers’ Compensation Board.
 
 Id.; see also
 
 Clemmer v. Carpenter, 648 P.2d 341, 347-48 (N.M. Ct. App. 1982) (holding that if employee is injured while providing services to concurrent employers and injury “cannot be attributed to a specific employer, but . . . services [are] performed for both employers, then both employers are liable”).
 

 Apportionment of liability between concurrent employers is a factual determination. IB Arthur Larson, Worker’s Compensation Law § 48.50 (1996). Other jurisdictions dealing with concurrent employment contexts have held that an employee’s award should be paid by each employer in the same proportion as wages
 
 *1032
 
 were paid to the employee.
 
 See
 
 Sirkin and Levine v. Timmons, 652 A.2d 1079, 1080 (Del. Super. Ct. 1994) (affirming Industrial Accident Board’s apportionment of payments based on responsibility for wages of each of two concurrent employers); Holdren v. Lease Management, Inc., 233 N.W.2d 59 (Mich. Ct. App. 1975) (holding concurrent employers liable for employee’s injury and apportioning damages according to the amounts the two employers had contributed to the employee’s overall income); Koch v. Horseshoe Stables, 261 N.Y.S.2d 123 (App. Div. 1965) (holding that where employee was paid $60 by one employer and $15 by the other, the concurrent employers should pay the award in the same proportion). We conclude that in concurrent employment situations, apportionment on the basis of each employer’s responsibility for wages is appropriate and that Harold’s Club and Riverboat are responsible for Gothro’s claim in the same proportion as they contributed to her overall wages.
 

 CONCLUSION
 

 Financial responsibility for Gothro’s claim should be apportioned between Harold’s Club and Riverboat on the basis of each employer’s responsibility for wages to Gothro at the time of her March 7, 1994 injury. Therefore, we reverse and remand this case to the district court for further proceedings consistent with this opinion.
 

 [1]
 

 Harold’s Club was self-insured during the period Gothro worked for it.
 

 [2]
 

 Technically speaking, SIIS did not deny Gothro’s claim because it maintains that there was no claim filed with it.
 

 [3]
 

 On October 29, 1996, we granted Riverboat’s motion to remove SUS as a respondent.