TERESA CURRIER, as Personal Representative of JAMES RAIKE, Deceased, Appellant, *v.* THE STATE INDUSTRIAL INSURANCE SYSTEM, an Agency of the STATE OF NEVADA; and BEL-AIR PLASTER-ING, Respondents.

No. 28127

April 9, 1998                                   956 P.2d 810

---

*Nancyann Leeder,* Nevada Attorney for Injured Workers, Carson City, for Appellant.

*Lenard T. Ormsby,* General Counsel, and *Javier A. Arguello,* Associate General Counsel, Carson City, for Respondent State Industrial Insurance System.

*McGroarty & Lane,* Las Vegas, for Respondent Bel Air.

## OPINION

*Per Curiam:*

This is an appeal from the district court's order reversing the appeals officer's decision that sufficient medical documentation existed upon which to base a posthumous permanent partial disability (PPD) rating on behalf of the deceased claimant, James Raike. On December 12, 1991, Raike sustained injuries to his left wrist, elbow, and shoulder while working as a lather for Bel-Air Plastering and sought medical treatment from orthopedic surgeon Patrick J. Brandner, M.D. (Dr. Brandner).

On June 11, 1992, Dr. Brandner informed the State Industrial Insurance System (SIIS) that Raike's wrist problem was work-related, permanent and progressive, and would probably require surgical treatment. In August 1992, Raike suffered a fatal non-industrially related heart attack. Approximately two years after his death, Raike's widow, Teresa Currier, requested a PPD evalu-

ation of her deceased husband. After a review of his medical records, SIIS medical advisor Mary Ann Shannon M.D. (Dr. Shannon), concluded that there was insufficient documentation upon which to provide a rating. Consequently, on September 2, 1994, SIIS denied Currier's request for the PPD evaluation. The hearing officer affirmed SIIS' decision.

Currier appealed to the appeals officer, who reversed the hearing officer's decision and ordered SIIS to provide a posthumous PPD evaluation based on Raike's medical records. Following the appeals officer's determination, SIIS petitioned for judicial review. The district court reversed the appeals officer's decision, concluding that Raike's entitlement to a PPD evaluation had not accrued prior to his non-industrial death because his medical condition was neither stable nor ratable pursuant to NRS 616.537(1)-(2) and NAC 616.5545. Currier now appeals the order of the district court.

## FACTS

On December 12, 1991, Raike sustained injuries to his left wrist, elbow, and shoulder while working within the scope of his employment as a lather for Bel-Air Plastering. Raike sought treatment from orthopaedic surgeon Dr. Brandner, who, in a letter to SIIS dated June 11, 1992, indicated that he had diagnosed Raike as having intercarpal arthritis of the scaphoradial joint with mild degenerative changes in other portions of the wrist.

Dr. Brandner concluded that Raike's medical condition was caused by the nature of his employment as a lather, where he engaged in multiple, repetitive motions for long periods of time. Dr. Brandner further concluded that, in his professional opinion, Raike's condition was permanent and progressive. Dr. Brandner concluded his letter to SIIS by indicating that Raike would most likely need to have a surgical fusion of his left wrist.

On August 2, 1992, Raike died from a non-industrial related heart attack. Approximately two years after his non-industrial death, Currier, Raike's widow, requested a PPD evaluation and rating on behalf of her deceased husband. In response to this request, SIIS asked its medical advisor whether, based on the available medical documentation, Raike had an impairment. In her response dated August 25, 1994, SIIS medical advisor Dr. Shannon, concluded:

> There is not sufficient reporting to rate the wrist sprain, and elbow and shoulder tendinitis. This Claimant's problems-the wrist is industrial only based on aggravation of pre-existing non-industrial arthritis of the wrist. The exams are insufficient to give any rating.

On September 2, 1994, SIIS denied Currier's request for a PPD evaluation. On October 7, 1994, Currier appealed SIIS' decision to the hearing officer, who, by decision dated November 9, 1994, affirmed SIIS' determination that there was insufficient evidence upon which to support a PPD evaluation and rating. Currier appealed the hearing officer's decision to the appeals officer. In preparation for this hearing, Currier requested an additional evaluation of Raike's medical files from Dr. Brandner. On January 13, 1995, Dr. Brandner reported:

> I could only estimate the rating of [Raike's] injury to his wrist from my recollection. He had lost approximately 70-90% of his motion and the wrist extension was to 10 degrees with flexion to 10 degrees, giving him an extension percent impairment of 8% and 14% in extension and flexion, respectively, giving him a total impairment of 21% for his wrist. His radial and ulnar deviations were limited to 95 degrees, to the best of my recollection, and this would give him a 12% total impairment for the loss of the deviation motions. This gives a total of 30% impairment of his upper extremity, translating to 18% impairment of the whole person . . . His range of motion of his wrist after surgical fusion would be 0%.

In addition to requesting Dr. Brandner's evaluations, Currier also requested an evaluation of Raike's medical records from Dr. B.J. Molzen. After reviewing Raike's medical file, along with the reports of Dr. Brandner, Dr. Molzen concluded in a report dated March 14, 1995, that Raike would have had an approximate fifteen percent to eighteen percent impairment rating.

In a decision dated March 22, 1995, the appeals officer reversed the hearing officer by concluding that Raike's medical records contained sufficient documentation upon which to base a posthumous rating evaluation. In making this determination, the appeals officer considered the reports of Drs. Brandner, Molzen, and Shannon. Although Dr. Molzen's rating was not obtained pursuant to the rating physician rotating list, the appeals officer relied heavily on Dr. Molzen's report in concluding that there was sufficient documentation upon which to base a rating evaluation.

Because of the preponderance of medical evidence, the appeals officer concluded that Raike's entitlement to PPD compensation had accrued prior to his death pursuant to NRS 616.605[1] and

---

[1]NRS 616.605(1) (currently codified as NRS 616C.490(1)) provided:

> Every employee, in the employ of an employer within the provisions of this chapter, who is injured by an accident arising out of and in the

NRS 616.550.[2] Consequently, the appeals officer remanded the matter to SIIS for a posthumous rating evaluation by a physician next on the IIRS rotating list. Lastly, the appeals officer ordered SIIS to pay Raike's dependents any benefits resulting from that evaluation pursuant to NRS 616.615.

In its order dated December 13, 1995, the district court reversed the appeals officer's decision after concluding that Raike's entitlement to PPD benefits had not accrued prior to his non-industrial death because his medical condition was not stable and ratable as required by NRS 616.537(1)-(2)[3] and NAC 616.5545.[4] Currier now appeals the decision and order of the district court.

## DISCUSSION

*Standard of review*

This court's role in reviewing an administrative decision is

---

course of employment is entitled to receive the compensation provided for permanent partial disability. As used in this section "disability" and "impairment of the whole man" are equivalent terms.

[2]NRS 616.550 (currently codified as NRS 616C.205) provided in pertinent part:

[B]ut in the case of the death of an injured employee covered by this chapter from causes independent from the injury for which compensation is payable, any compensation due the employee which was awarded or accrued but for which a check was not issued or delivered at the date of death of the employee is payable to his dependents as defined in NRS 616.615.

[3]NRS 616.537(1)-(2) (recodified as NRS 616C.490(2)) provided:

1. An insurer shall schedule a rating for an injured employee within 30 days after the injured employee is determined to be stable and ratable by the treating physician or chiropractor.

2. A rating evaluation must include an evaluation of the loss of motion, sensation and strength of an injured employee if the injury is of a type that might have caused such a loss.

[4]In relevant part, NAC 616.5545 (recodified as NAC 616C.103) provided:

1. When a physician or chiropractor . . . has determined that an injured worker is stable, stationary or ratable and information in the insurer's file on the injured worker indicates the probability that he has a ratable impairment, according to the American Medical Association's "Guides to the Evaluation of Permanent Impairment," the insurer shall comply with subsection 2 of NRS 616.605 by selecting a physician or chiropractor from the panel designated by the administrator, to evaluate the injured worker and determine the extent of any permanent impairment.

2. . . . [I]f the evaluating physician or chiropractor finds that the injured worker has a ratable impairment, the insurer shall, within 30 days after receipt of the physician's or chiropractor's evaluation, offer the injured worker the award to which he is entitled. . . .

identical to that of the district court. Collett Electric v. Dubovik, 112 Nev. 193, 196, 911 P.2d 1192, 1195 (1996). We shall not substitute our judgment for that of the agency in regard to questions of fact, but must determine whether the agency's decision was clearly erroneous or an arbitrary abuse of discretion. *Id.;* NRS 233B.135(2). The decision of the agency will be affirmed if substantial evidence exists to support it. SIIS v. Swinney, 103 Nev. 17, 20, 731 P.2d 359, 361 (1987). Substantial evidence is that which " 'a reasonable mind might accept as adequate to support a conclusion.' " State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting Richardson v. Perales, 402 U.S. 389 (1971)). Questions of law, however, are reviewed *de novo. Collett,* 112 Nev. at 196, 911 P.2d at 1195.

In American Int'l Vacations v. MacBride, 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983), we concluded "that a reviewing court may undertake independent review of the administrative construction of a statute." Here, because the central issue on appeal concerns the propriety of the appeals officer's interpretation as to when an injured worker's entitlement to PPD compensation "accrues" pursuant to NRS 616.605 and NAC 616.5545, we conclude that an independent review of the appeal's officer's construction of these statutory provisions is appropriate.

*The district court erred in concluding that the deceased claimant's entitlement to permanent partial disability compensation did not accrue prior to his non-industrial death*

The appeals officer concluded that Raike's entitlement to PPD compensation had accrued prior to his non-industrial death pursuant to NRS 616.605(1). The district court reversed the decision of the appeals officer after concluding that Raike's entitlement to PPD compensation had not accrued prior to his non-industrial death because his medical condition was not stable and ratable as required by NRS 616.537(1)-(2) and NAC 616.5545. Currier argues that NRS 616.605(1) does not preclude the possibility of a posthumous rating using a deceased claimant's medical records. We agree.

Although SIIS argues that Raike was not entitled to a posthumous PPD rating because his medical condition had not yet stabilized prior to his death, we approvingly note the authority from other jurisdictions which permits the use of medical records to obtain posthumous PPD evaluations in those situations where an injured worker has suffered a non-industrial death prior to stabilization.

In his treatise on workers' compensation law, Professor Larson states:

> Since awards for permanent partial disability are normally to be made only after the healing period has been completed and the injury has become stabilized so that the degree of permanent impairment can be appraised, if the injured employee dies before stabilization has taken place, the degree of impairment should not be taken as that in effect at the moment of death. The proper procedure is to make the best possible medical estimate of the probable residual disability that would have remained if the employee had lived to complete his healing period.

4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law,* § 58.45 (1997).

In Robinson v. Newberg, 849 S.W.2d 532 (Ky. 1993), Robinson suffered a work-related back injury in February, 1989. *Id.* at 532. His employer paid temporary total disability benefits until March 2, 1993, the day on which Robinson died from a non-work-related heart attack. *Id.* at 533. After Robinson's death, his widow's claim for either permanent total disability or permanent partial disability was denied by the Workers' Compensation Board on the ground that Robinson's medical condition had not stabilized prior to his non-industrial death. *Id.*

On appeal to the Supreme Court of Kentucky, Robinson's widow argued that Ky. Rev. Stat. Ann. § 342.730(3)[5] did not require a showing that the claimant's medical condition had stabilized prior to the claimant's non-work-related death in order for the dependents to be entitled to a deceased claimant's disability benefits. *Id.* at 534. Quoting Professor Larson, the court agreed with this assertion and concluded that " 'the proper procedure is to make the best possible medical estimate of the probable residual disability that would have remained if the employee had lived to complete his healing period.' " *Id.*

Likewise, in Sears Roebuck v. Ralph, 666 A.2d 1239 (Md. 1995), the claimant suffered a compensable work-related back injury in February 1991, and began receiving treatment from an

---

[5]Ky. Rev. Stat. Ann. § 342.730(3) provides in part:

When an employe [sic], who has sustained disability compensable under this section, and who has filed, or could have timely filed, a valid claim in his lifetime, dies from causes other than the injury before the expiration of the compensable period specified, portions of the income benefits specified and unpaid at the individual's death, whether or not accrued or due at his death, shall be paid, under an award made before or after such death, for the period specified in this section, to and for the benefit of the persons within the classes . . . specified. . . .

*Robinson,* 849 S.W.2d at 534 (quoting Ky. Rev. Stat. Ann. § 342.730(3)).

orthopedic physician. *Id.* at 1240. Additionally, the employer's insurer began paying the claimant temporary total disability benefits in March 1991. *Id.*

In June 1991, at the request of the insurer, an independent medical examination was performed on the claimant by a different physician who concluded that the claimant would be able to return to work after two to four weeks of treatment. *Id.* In contrast, the claimant's original physician concluded that he found the claimant to be " 'totally disabled for any gainful employment.' " *Id.* In August 1991, the claimant was diagnosed with colon cancer and died as a result on November 9, 1991. *Id.* at 1241.

Approximately four months after his non-work-related death, the claimant's widow made a request for permanent partial disability benefits, submitting the original physician's notations regarding the claimant's treatment. *Id.* The Workers' Compensation Commission concluded that the claimant's widow was not entitled to PPD benefits because the claimant "had not reached maximum medical improvement at the time of his death . . . ." *Id.*

On appeal, the Maryland Court of Appeals concluded that an injured employee need not have obtained a permanent impairment rating prior to a non-industrial death in order to recover PPD benefits. *Id.* at 1245. Consequently, the court concluded that posthumous disability ratings could be used as evidence to support the awarding of PPD benefits to the dependents of deceased claimants. *Id.* Implicit in the court's decision was the policy rationale that the dependents of the deceased claimant should not be penalized because the claimant died before the commission was able to hold a hearing and make a determination concerning the claimant's disability award.

Here, we conclude that there are important policy reasons which favor the adoption of a rule allowing for posthumous PPD evaluations in cases where the claimant suffers a non-industrial death prior to obtaining a rating or stabilization of injury. Because workers' compensation laws were enacted to protect injured workers and their families, the dependents of a deceased claimant should not be penalized because a claimant suffers a non-industrial death prior to obtaining a disability rating or stabilization of injury. Accordingly, we hold that the district court erred in concluding that Raike's entitlement to PPD benefits had not yet accrued prior to his non-industrial death because his medical condition was not stable and ratable pursuant to NRS 616.537(1)-(2) and NAC 616.5545. While we perceive that there may be future cases where it will be impossible to establish a posthumous rating evaluation utilizing a deceased claimant's available medical records, that situation is not presented here.

## CONCLUSION

Based on the important policies underlying workers' compensation laws, we hold that when a claimant suffers a non-industrially related death prior to stabilization of injury, a posthumous PPD evaluation may be conducted utilizing the deceased claimant's existing medical records.[6] Any benefits resulting from such an evaluation may be paid to the dependents of the deceased claimant. Therefore, we conclude that the district court erred in determining that Raike's entitlement to PPD benefits had not accrued prior to his death because his medical condition was not yet stable or ratable.

Accordingly, we reverse the order of the district court and reinstate the decision of the appeals officer directing SIIS to conduct a posthumous PPD rating evaluation utilizing Raike's available medical records.

---

[6]Here, the appeals officer determined that the records, as a factual matter, were sufficient to enable a qualified physician to posthumously rate Raike's condition. It was error for the district court not to defer to that determination.