557 S.E.2d 324

**Juanita MARTIN, Widow of Dana Martin, Deceased, Appellant,**

v.

**WORKERS' COMPENSATION DIVISION AND W–P COAL COMPANY, Appellees.**

No. 28516.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 3, 2001.

Decided Nov. 30, 2001.

Dissenting Opinion of Justice Maynard Dec. 11, 2001.

S.F. Raymond Smith, Esq., Rundle & Rundle, Pineville, for Appellant.

Sandra L. Evans, Esq., Charleston, for Appellee Workers' Compensation Division.

Harold S. Albertson, Esq., Albertson & Jones, Charleston, for Appellee W–P Coal Company.

McGRAW, Chief Justice.

Mrs. Juanita Martin appeals a decision of the Workers' Compensation Appeal Board that affirmed a denial of her late husband's claim for a permanent total disability award. She was substituted as a party to this action upon the death of her husband Dana Martin. Because we find that Mr. Martin's death does not affect the outcome of his appeal, and because we conclude that the Office of Judges and the Workers' Compensation Appeal Board erred in not awarding permanent total disability benefits, we reverse.

## I.

### BACKGROUND

Mr. Dana Martin worked for approximately twenty years as a coal miner for W–P Coal Company in Southern West Virginia. As is often the case, Mr. Martin contracted occupational pneumoconiosis while working in the mines, for which he submitted a workers' compensation claim in 1987. That 1987 filing resulted in a finding by the Workers' Compensation Division that Mr. Martin suffered from a 50 percent permanent partial disability due to occupational pneumoconiosis. Mr. Martin sought an increase in his award by filing another claim application in 1994, which the Division numbered 94–37387.

Because Mr. Martin's injury was occupational pneumoconiosis, the Occupational Pneumoconiosis Board had to make a determination if he merited an additional award. On March 13, 1995, the Occupational Pneu-

moconiosis Board ruled that Mr. Martin was not entitled to any additional permanent partial disability award beyond the 50 percent award he had already received. Mr. Martin appealed this decision to the Office of Judges, which also ruled against him, issuing a decision on October 28, 1998.

Undeterred, Mr. Martin took this decision of the Office of Judges to the next step in the lengthy process, an appeal to the Workers' Compensation Appeal Board (the "Appeal Board"). After several months, the Appeal Board also ruled against Mr. Martin, issuing on March 31, 1999, an order affirming the prior decision of the Office of Judges. Mr. Martin proceeded to the final step in the process, a petition for appeal to this Court, which he filed by counsel on April 9, 1999.

Before this Court could act on the petition, Mr. Martin died on November 13, 1999. This Court granted his petition for appeal on November 16, 1999, and granted his wife's request to be substituted as appellant in this case on December 20, 2000.

## II.

### STANDARD OF REVIEW

■ If considering a question of fact, "[i]n most cases we show substantial deference to the factual findings of the Workers' Compensation Appeal Board." *Plummer v. Workers' Compensation Division,* 209 W.Va. 710, 712, 551 S.E.2d 46, 48 (2001). Indeed, we have repeatedly held that: "This Court will not reverse a finding of fact made by the Workmen's Compensation Appeal Board unless it appears from the proof upon which the appeal board acted that the finding is plainly wrong." Syllabus, *Dunlap v. State Workmen's Compensation Commissioner,* 152 W.Va. 359, 163 S.E.2d 605 (1968); *Accord, Rushman v. Lewis,* 173 W.Va. 149, 313 S.E.2d 426 (1984); *Conley v. Workers' Compensation Div.,* 199 W.Va. 196, 483 S.E.2d 542 (1997).

■ However, when considering a question of law, we have a different standard: "[w]hile the findings of fact of the appeal board are conclusive unless they are manifestly against the weight of the evidence, the legal conclusions of the appeal board, based

upon such findings, are subject to review by the courts." *Barnett v. State Workmen's Compensation Com'r,* 153 W.Va. 796, 812, 172 S.E.2d 698, 707 (1970) (quoting *Emmel v. State Compensation Director,* 150 W.Va. 277, 145 S.E.2d 29 (1965)).

■ Also, we note that: "When the Workers' Compensation Appeal Board reviews a ruling from the Workers' Compensation Office of Judges it must do so under the standard of review set out in W. Va.Code § 23–5–12(b) (1995), and failure to do so will be reversible error." Syl. pt. 6, *Conley v. Workers' Compensation Div.,* 199 W.Va. 196, 483 S.E.2d 542 (1997). That code section provides, in pertinent part:

> [The WCAB] shall reverse, vacate or modify the order or decision of the administrative law judge if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative law judge's findings are:
>
> (1) In violation of statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the administrative law judge; or
>
> (3) Made upon unlawful procedures; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va.Code § 23–5–12(b) (1995). Bearing these various standards in mind, we turn to the case before us.

## III.

### DISCUSSION

#### A. The Effect of Mr. Martin's Death

The initial petition for appeal in this case concerned only whether or not Mr. Martin was entitled to an increase in his permanent partial disability award. We will discuss that issue in this opinion, but before doing so, we must address another issue raised by Mr. Martin's demise. Because Mr. Martin died

before his claim could reach a final resolution, we must examine how his death may have affected the outcome of his claim.

■ Before proceeding, we reiterate the principles that guide us when considering a workers' compensation issue. " 'The Workmen's Compensation Law is remedial in its nature, and must be given a liberal construction to accomplish the purpose intended.' Syl. pt. 3, *McVey v. Chesapeake & Potomac Telephone Co.*, 103 W.Va. 519, 138 S.E. 97 (1927) (citation omitted)." Syl. pt. 1, *Plummer v. Workers' Compensation Division*, 209 W.Va. 710, 551 S.E.2d 46 (2001).

■ Although the rules and regulations governing the workers' compensation system in this state are necessarily detailed and complex, we must be careful to prevent those deserving of compensation from being thwarted by technicalities or procedural niceties:

"[The Workers' Compensation Act] requir[es] the state compensation commissioner in administering the workmen's compensation fund, to ascertain the substantial rights of the claimants in such manner as will "carry out justly and liberally the spirit of the act" unrestricted by technical and formal rules of procedure...." Syllabus, *in part, Culurides v. Ott*, 78 W.Va. 696, 90 S.E. 270 (1916) (citation omitted).

Syl. pt. 2, *Plummer v. Workers' Compensation Division*, 209 W.Va. 710, 551 S.E.2d 46 (2001). Finally, we note that the instant matter, as is the case with many workers' compensation claims, has taken many years to reach this Court. We have often held that such delay runs counter to the avowed purpose of the system. "Long delay in processing claims for workmen's compensation is not consistent with the declared policy of the Legislature to determine the rights of claimants as speedily and expeditiously as possible. W. Va.Code, 23–5–3a." Syl. pt. 1, *Workman v. Workmen's Compensation Comm'r*, 160 W.Va. 656, 236 S.E.2d 236 (1977).

Appellee points out that W. Va.Code § 23–4–6(g) bears on the outcome of this case.

1. The Office of Judges did not exist at that time.

That section of the statute reads in pertinent part:

(g) Should a claimant to whom has been made a permanent partial award die from sickness or noncompensable injury, the unpaid balance of such award shall be paid to claimant's dependents as defined in this chapter, if any; such payment to be made in the same installments that would have been paid to claimant if living: Provided, That no payment shall be made to any surviving spouse of such claimant after his or her remarriage, and that this liability shall not accrue to the estate of such claimant and shall not be subject to any debts of, or charges against, such estate.

W. Va.Code § 23–4–6(g) (1999). The point made by appellee is that Mr. Martin did not receive any favorable rulings along the way as his claim advanced toward this Court, and that, at least on the basis of the 1994 claim (94–37387), Mr. Martin cannot be said to be a claimant "to whom has been made a permanent partial award." Thus, goes the appellee's argument, because Mr. Martin died before receiving any favorable decisions in the 1994 claim, his claim has been extinguished.

We note that a long line of authority stands between Mrs. Martin and any potential recovery of the benefits sought by her late husband. First in that line is a case with facts very similar to the instant case. In *Hughes v. State Compensation Comm'r*, 145 W.Va. 629, 116 S.E.2d 153 (1960), Mr. Hughes was a workers' compensation claimant who had received a 50 percent permanent partial disability award, but sought to reopen that claim so that he might receive an additional award. At the first level of the process, the Division ruled he was not entitled to any additional award. However, the Appeal Board [1] ruled on December 10, 1959, that Mr. Hughes was entitled to an additional 10 percent disability award. Unfortunately for all concerned, Mr. Hughes had died three weeks before, in late November of that year.

This Court held that, because the initially unfavorable decision remained in effect until overruled, and that because Mr. Hughes died before the favorable decision was issued, the

law would not permit his widow to receive the additional award to which the Appeal Board thought him entitled.[2]

> [I]n the case now under consideration no award had "been made" at the date of the death of the claimant. On that date there was in effect the unreversed order of the commissioner denying further benefits. The claimant was not one to whom, at the date of his death, had "been made an award."

*Hughes v. State Compensation Comm'r,* 145 W.Va. 629, 634, 116 S.E.2d 153, 156 (1960). In essence, because Mr. Hughes died holding a "losing decision," the later "winning decision" was of no help to his widow.

In a case with an even more Draconian holding, the Court denied relief to a widow whose husband died a mere ten days "too early." In *Ferguson v. State Workmen's Compensation Commissioner,* 152 W.Va. 366, 163 S.E.2d 465 (1968), an injured Mr. Ferguson was examined by the then-called Silicosis Medical Board, and found by the Board to be entitled to a 30 percent permanent partial disability award. The Board forwarded this decision to the Commissioner, who officially made the award on June 2, 1967. Unfortunately, Mr. Ferguson died ten days before, on May 23, 1967. The Court explained its holding [3] by stating:

> Alleged rights and remedies, not provided by the workmen's compensation statutes, can not be recognized or granted by the courts. As the statutory requirement that a valid award of compensation must be made to the claimant while living to entitle his widow to receive the unpaid balance of such award has not been satisfied in this case, this Court is without power or au-

thority to award compensation benefits to the dependent widow of the deceased employee, Hercy C. Ferguson, or to relieve her from the unfortunate situation which has resulted from the untimely death of her husband.

*Ferguson v. State Workmen's Compensation Commissioner,* 152 W.Va. 366, 371, 163 S.E.2d 465, 468 (1968). It seems that in this case, "untimely death" was no mere platitude.

In the case of *Hagy v. State Workmen's Compensation Commissioner,* 163 W.Va. 198, 255 S.E.2d 906 (1979), Mr. Hagy had lost several fingers from his left hand in an accident in Virginia. He was later injured in West Virginia and received benefits for temporary total disability while his hand healed. After reaching the maximum degree of recovery from the accident, his doctor opined that he had a 50 percent permanent partial disability. Before the Commissioner made a final decision regarding the permanent partial disability award, Mr. Hagy died. The Commissioner dismissed his claim, and his widow appealed.

Citing the forerunner to W. Va.Code § 23–4–6(g), the Court ruled against the widow, explaining: "This statute predicates the right of the claimant's dependents to obtain the benefits of the claimant on his initially having been given an award of permanent partial disability. The phrase 'unpaid balance of such award' also clearly indicates this construction." *Hagy v. State Workmen's Compensation Commissioner,* 163 W.Va. 198, 201–02, 255 S.E.2d 906, 908 (1979).

Citing the earlier *Ferguson* case, the Court found that a claimant must have already won

---

2. The specific holding by the Court stated:
 A claimant who dies from sickness or noncompensable injury pending his appeal to the Workmen's Compensation Appeal Board from an order of the State Compensation Commissioner denying further benefits to him is not, at the time of his death, "a claimant to whom an award has been made" as contemplated by Code, 23–4–6(e) as amended.
 Syl. pt. 2, *Hughes v. State Compensation Comm'r,* 145 W.Va. 629, 116·S.E.2d 153 (1960).

3. In that case, the Court held:
 To entitle the dependent widow of a claimant, who dies from sickness or a noncompensable

injury, to payment of the unpaid balance of a permanent partial disability award of compensation under Section 6(e), Article 4, Chapter 23, Code, 1931, as amended, a valid award of such compensation must be made by the workmen's compensation commissioner during the lifetime of the claimant; and if such claimant dies before such award is made his dependent widow is not entitled to receive any part of an award which could have been made during the lifetime of the claimant.
Syl. pt. 2, *Ferguson v. State Workmen's Compensation Commissioner,* 152 W.Va. 366, 163 S.E.2d 465 (1968).

an award for a widow (or widower) to recover: "*Ferguson* requires that the Commissioner shall have made an award of permanent partial disability before the claimant's dependents are entitled to receive the benefits at his death under W. Va.Code, 23–4–6(g)." The Court in *Hagy* finished: "We conclude that under *Ferguson* the claimant's widow is not entitled to permanent partial disability benefits, since the claimant received no unscheduled permanent partial disability award during his lifetime and died of causes unrelated to the injury." *Hagy v. State Workmen's Compensation Commissioner*, 163 W.Va. 198, 203, 255 S.E.2d 906, 909 (1979).

However, *Hagy* did discuss the difference between W. Va.Code § 23–4–6, subsection(g) and W. Va.Code § 23–4–6, subsection (f), dealing with the loss of a body part. Subsection (f) then read, in pertinent part:

Should a claimant sustain a compensable injury which results in the total loss by severance of any of the bodily members named in this subdivision, die from sickness or noncompensable injury before the commissioner makes the proper award for such injury, the commissioner shall make such award to claimant's dependents as defined in this chapter, if any; such payment to be made in the same installments that would have been paid to the claimant if living: Provided, that no payment shall be made to any widow of such claimant after her remarriage, and that this liability shall not accrue to the estate of such claimant and shall not be subject to any debts of, or charges against, such estate.

W. Va.Code § 23–4–6(f) (1978).[4] The *Hagy* Court explained the different treatment dependents receive under the two subsections stems from the need for further evidence:

The apparent rationale for this provision is that a severance of a bodily member is subject to a specific scheduled award under W. Va.Code, 23–4–6(f). The Commissioner can thus easily determine the award amount without the benefit of medical advice. Consequently, there is no medical

evaluation and claimant's death does not affect the award process. His dependents, therefore, are entitled to the disability benefits. *Hagy v. State Workmen's Compensation Commissioner*, 163 W.Va. 198, 203, 255 S.E.2d 906, 909 (1979). As we discuss below, we feel the *Hagy* Court was in error.

Perhaps because of the Draconian holding in *Ferguson*, the Legislature made changes to the workers' compensation law so that a determination of the Occupational Pneumoconiosis Board had the same force and effect as a ruling by the Workers' Compensation Commissioner. See, W. Va.Code § 23–4–6(h) (1999). Two widows were found to be the beneficiaries of this change in the case of *Charles v. State Workmen's Comp. Comm'r*, 161 W.Va. 285, 241 S.E.2d 816 (1978). The *Charles* court noted: "The obvious purpose of the amendment was to allow dependents to receive a deceased employee's benefits where, as was often the case, the internal workmen's compensation procedure was so burdened and lengthy that many claimants died before a final Commissioner's award was made." *Id.*, 161 W.Va. at 287, 241 S.E.2d at 818 (footnote omitted).

While the *Charles* court recognized the unfairness in awarding dependents benefits only when the claimant managed to outlive the appeals process, the Court found it unnecessary to reexamine any of the earlier cases because the change in the statute provided the widows in that case with the relief they requested. But the Court made one important observation. It noted that W. Va. Code § 23–4–6 "provide[s] for distribution of funds after death of the employee to [his or her] dependents." *Id.* 161 W.Va. at 289, 241 S.E.2d at 819.

A case that anticipated the problem we face today is that of *Cole v. State Workmen's Compensation Comm'r*, 166 W.Va. 294, 273 S.E.2d 586 (1980). Although *Cole* dealt with the effect subsequent statutory enactments would have upon a worker's previously filed claim, the opinion discussed the very ques-

---

4. The last sentence of the subsection now reads: "Provided, That no payment shall be made to any surviving spouse of such claimant after his or her remarriage, and that this liability shall not ac-

crue to the estate of such claimant and shall not be subject to any debts of, or charges against, such estate." W. Va.Code § 23–4–6(f)(1999).

tion we now consider. In explaining that West Virginia focused on whether a claimant had died before the end of the appeals process, the Court suggested that this was perhaps not the best approach:

> [T]he rule often revolves around the question of whether the deceased employee received an "award", or the equivalent, before his death. While the outcome of such an inquiry frequently turns on statutory variables, most jurisdictions hold that if a claim has been filed, but no award is made at the time of death, the death will not abate the claim. 2 Larson, *Workmen's Compensation Law,* § 58.40 (1976). While West Virginia seems, at this juncture, to require that an "award" be made pursuant to W. Va.Code § 23–4–6(a) before dependents may recover, see *e.g., Hagy v. State Workmen's Compensation Commissioner,* 163 W.Va. 198, 255 S.E.2d 906 (1979); *Richmond v. State Compensation Commissioner,* 136 W.Va. 234, 67 S.E.2d 39 (1951), other courts [5] have criticized this view as unfairly providing the employer with a windfall because of the death of the employee before a formal award.

*Cole v. State Workmen's Compensation Comm'r,* 166 W.Va. 294, 298–99, 273 S.E.2d 586, 589 (1980) (footnote added) (citations omitted). The Court went on to note that, even if the death of the claimant caused some difficulty in ascertaining the proper amount of an award, death should not bar an otherwise valid award:

> The question of when death precludes derivative benefits is often addressed in the context of determinations on permanent partial disability awards. According to Professor Larson, the death of the claimant before an award is made does not make the disability impossible to prove and

should not result in defeating an award. Rather, the better approach "is to make the best possible medical estimate of the probable residual disability that would have remained if the employee had lived to complete his healing period."

*Id.* [6]

Although the *Cole* opinion does not attempt to overrule this line of cases, it clearly did cast some doubt upon them. "[W]e today question, in light of Professor Larson's admonition, 2 Larson, § 58.40 (1976), the rather draconian and technical approach laid down in *Hagy, supra,* that an "award" must be made prior to death[.]" *Id.,* 166 W. Va. at 301, 273 S.E.2d at 591.

We recently dealt with a similar issue in the case of *Wingrove v. Workers' Compensation Div.,* 208 W.Va. 80, 538 S.E.2d 378 (2000). In *Wingrove,* another coal miner, Mr. Wingrove, had filed a workers' compensation claim, but died before the claim reached a final decision before this Court. However, Mr. Wingrove had received an initially favorable ruling from the Division, which gave him a permanent total disability award. Later, the Appeal Board stripped Mr. Wingrove of that award, so he appealed to this Court. Unfortunately, Mr. Wingrove died after his appeal was granted, but before this Court could rule on his case.

■ As in the instant case, *Wingrove* presented the question of how the death of a claimant during the pendency of his appeal would affect the outcome of his workers' compensation claim. We ruled in *Wingrove* that the statute does not require a claimant to have received a "final award" before death in order for his family to be eligible for receipt of any unpaid benefits. Specifically, we held:

> We find no rational basis for an inference that the legislature, when it used the term "award," meant to restrict the right of a widow whose husband suffered a permanent partial disability to receive payment of compensation which he would have received had he lived, to a greater degree than it restricted the right of a widow whose husband was totally disabled. *Powell v. Department of Labor and Industries,* 79 Wash.2d 378, 384, 485 P.2d 990, 993 (1971).

---

**5.** The Court cited several cases from other states to support this proposition, including, *Reed v. Industrial Commission of Arizona,* 104 Ariz. 412, 454 P.2d 157 (1969); *State Department of Motor Vehicles v. Richardson,* 233 Md. 534, 197 A.2d 428 (1964); *Cureton v. Joma Plumbing & Heating Co.,* 38 N.J. 326, 184 A.2d 644 (1962); *Russo v. Wright Aeronautical Corp.,* 25 N.J.Misc. 109, 51 A.2d 100 (1947).

**6.** In support of this contention, the *Cole* Court cited a Washington State case:

If a claimant in a Workers' Compensation case to whom an award was made, dies while appealing a subsequent adverse decision concerning that award, the appeal shall proceed as if death had not occurred. Any unpaid compensation awarded as a result of such an appeal, which would have been paid or payable to the claimant up to the time of his or her death, shall not accrue to the estate of the claimant, but shall be payable to the dependents of the deceased claimant, if there are dependents at the time of death.

Syl. pt. 3, *Wingrove v. Workers' Compensation Div.*, 208 W.Va. 80, 538 S.E.2d 378 (2000).

In *Wingrove*, we recognized that Mr. Wingrove had faced long delays in the adjudication of his claim, and stated:

By not requiring a final award, the effect of delays in the adjudicatory process is minimized. In this case, there were long delays in the adjudicatory process; a review by the Office of Judges took almost four years. To require a final award would not "further justice" (*Click [v. Click]*, *id.* [98 W.Va. 419, 127 S.E. 194 (1925)]) because it would reward a system that did not "determine the rights of claimants as speedily and expeditiously as possible." *Workman, supra.*

*Wingrove v. Workers' Compensation Div.*, 208 W.Va. 80, 85, 538 S.E.2d 378, 383 (2000). The instant case presents us with a similar problem, and again highlights the perverse and pernicious incentive this Court's prior interpretation of the law has created for those opposing the claim of an injured worker.

Although surely not the intent of the Court or the Legislature, this interpretation of law has created an incentive for delay for those who oppose a workers' compensation award. While we impute no evil intentions to the employer in this case, allowing the death of the claimant to extinguish the claim sets up a unavoidable conflict. For the purely rational economic actor, it *is* advantageous to extend

litigation in the hope that the claimant will die before ever receiving a favorable decision.

This was also true in Mr. Wingrove's case, but because of the particular history of Mr. Wingrove's claim, we did not have to face head-on the problems created by this old line of cases. Indeed, we even adopted that logic as our own in examining W. Va.Code § 23–4–6(g).[7] However, upon further examination, we must conclude that we were in error. We now believe that the theory espoused by this entire line of cases is fundamentally flawed.

Subsection (g) of W. Va.Code § 23–4–6 says nothing about extinguishing a claim upon the death of a claimant. Subsection (g) merely describes how one should distribute the unpaid balance of an award *if* the claimant dies. As noted above, subsection (g) merely "provide[s] for distribution of funds after death of the employee to [his or her] dependents." *Charles v. State Workmen's Comp. Comm'r*, 161 W.Va. 285, 289, 241 S.E.2d 816, 819 (1978). Quite logically, one cannot distribute an award unless that award, in fact, exists. Thus subsection (g) describes how an award, once it exists, should be distributed if the claimant dies. The section is entirely silent as to how one should proceed in the circumstance where a claimant dies before receiving a favorable ruling.

Also, we note that other portions of our workers' compensation law contain contingencies for dealing with a claim *after* the claimant has died. For example, the section dealing with examinations by the Occupational Pneumoconiosis Board establishes examination requirements for living claimants, and also states "If the employee be dead, the notice of the board shall further require that the claimant produce necessary consents and permits so that an autopsy may be performed, if the board shall so direct." W. Va.Code § 23–4–8b (1971). If our law permits the Occupational Pneumoconiosis Board to examine deceased employees to gather evidence of a compensable injury, it surely

---

7. We stated: "The plain meaning of the statute requires an award to be given during a claimant's lifetime for the payment of unpaid benefits to a claimant's dependents after his or her

death." *Wingrove v. Workers' Compensation Div.*, 208 W.Va. 80, 85, 538 S.E.2d 378, 383 (2000). Upon further reflection, we find it necessary to repudiate this statement.

permits the appellate organs of the workers' compensation scheme to continue processing a claim if a claimant dies before the procedure has run its course.

 Two other provisions support our contention, one of which we have noted previously:

Should a claimant sustain a compensable injury which results in the total loss by severance of any of the bodily members named in this subdivision, die from sickness or noncompensable injury before the division makes the proper award for such injury, the division shall make such award to claimant's dependents as defined in this chapter, if any; such payment to be made *in the same installments that would have been paid to claimant if living:* Provided, That no payment shall be made to any surviving spouse of such claimant after his or her remarriage, and that this liability shall not accrue to the estate of such claimant and shall not be subject to any debts of, or charges against, such estate.

W. Va.Code § 23–4–6(f) (1999) (emphasis added). And several sections later, the Code provides:

Compensation, either temporary total or permanent partial, under this section shall be payable only to the injured employee and the right thereto shall not vest in his or her estate, except that any *unpaid compensation which would have been paid or payable to the employee up to the time of his or her death, if he or she had lived, shall be paid to the dependents* of such injured employee if there be such dependents at the time of death.

W. Va.Code § 23–4–6(*l*) (1999) (emphasis added). As we have stated on numerous occasions, "[s]tatutes *in pari materia,* must be construed together and the legislative in-

tention, as gathered from the whole of the enactments, must be given effect." Syl. pt. 3, *State ex rel. Graney v. Sims,* 144 W.Va. 72, 105 S.E.2d 886 (1958). We are also mindful that:

Given the statutory basis of workers' compensation rights and resultant remedies, the primary method of ascertaining the availability and scope of such benefits is to look to the plain meaning of the applicable statutes and to ascertain the Legislature's intent in enacting the provisions at issue. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). *Accord West Virginia Health Care Cost Review Auth. v. Boone Memorial Hosp.,* 196 W.Va. 326, 336, 472 S.E.2d 411, 421 (1996).

*State ex rel. ACF Industries, Inc. v. Vieweg,* 204 W.Va. 525, 537, 514 S.E.2d 176, 188 (1999).

Looking at these provisions together, the common thread running through all is that the Legislature intended that in the event a workers' compensation claimant died, the *dependents,* and not the estate, should receive the claimant's compensation. The Legislature is demonstrating its desire, as it has done in the realm of wrongful death cases [8], that dependents in need of support receive compensation, and that the compensation does not end up in the hands of any creditors that may have claims upon the decedent's estate.

So, while we have utmost respect for our predecessors on this Court, and some chagrin over our recent statements in *Wingrove,* we feel that the earlier line of cases that saw

---

8. In every such action for wrongful death the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents and any persons who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) of this section. If there are no such survivors, then the damages shall be distributed in accordance with the decedent's will or, if there is no will, in accordance with the laws of descent and distribution as set forth in chapter forty-two of this code. If the jury renders only a general verdict on damages and does not provide for the distribution thereof, the court shall distribute the damages in accordance with the provisions of this subsection.
W. Va.Code § 55–7–6(b) (1992).

subsection(g) (or its forerunners) as a device to limit the recovery of widows and orphans was simply wrong.

At the time Mr. Martin petitioned the Court in this case, before his death, the disputed issue was whether Mr. Martin was owed additional compensation for his occupational pneumoconiosis impairment. Had he not died, and had this Court found in his favor, the Workers' Compensation Division would have owed Mr. Martin two things: a back pay award for the period of time from the onset date of his disability to the date of his favorable decision, and ongoing payments from the date of the decision until Mr. Martin's condition changed or until he died.

But, though Mr. Martin's death obviously impacts any future payments a still-living Mr. Martin might have received, we cannot see why his death should have any impact whatsoever on the question of what sort of award he was entitled to for the time he was

still alive, *i.e.*, the back pay award. Either the evidence shows he deserved it, or shows he did not. His death has no bearing on that question.[9]

■ Thus we hold that, if a claimant in a workers' compensation case dies during the pendency of the claims process, the claim shall proceed as if death had not occurred. If the claim ultimately prevails, all compensation that would have been awarded to the claimant, had he or she lived, shall be paid to the dependents of the deceased claimant. Any other claims any dependent might have as a result of the claimant's death shall proceed unaffected. To the extent that this holding conflicts with *Wingrove v. Workers' Compensation Div.*, 208 W.Va. 80, 538 S.E.2d 378 (2000), or *Hughes v. State Compensation Comm'r*, 145 W.Va. 629, 116 S.E.2d 153 (1960), or its progeny, they are hereby overruled.[10]

9. We are not alone in this view. Courts reviewing similar statutes in other states share this outlook:

> Defendants claim that there can be no recovery for disability benefits inasmuch as Holiday has died. They rely on Section 52–1–47(C) which provides that "in no case shall compensation benefits for disability continue after the disability ends or after the death of the injured workman[.]" This section provides that compensation benefits for disability terminate upon death of the worker. This section does not prohibit the payment of disability benefits to which the worker was entitled prior to death. Defendants state that Section 52–1–47 places a limitation on all the benefits authorized by Sections 52–1–41 to –46. Our response is that Section 52–1–47 says nothing about payment of disability benefits to which the worker was entitled prior to death.

> *Holliday v. Talk of the Town, Inc.*, 102 N.M. 540, 541, 697 P.2d 959, 960 (1985).

> And more recently, a Maryland court explained: The survival provisions of the Act were construed in *State v. Richardson.* We there held that "compensation payable" as used in the non-abatement provision, Md.Code (1957), Art. 101, § 36(4)(c), did not require an award to have been rendered prior to the claimant's death. After reviewing decisions in other states, this Court felt constrained, in view of the phraseology of § 36(4)(c) of the Maryland statute, to follow the reasoning of those cases which sustained awards made when the claimant had filed a claim but died from other non-compensable causes before a hearing could be held.

> *Sears, Roebuck and Company, Inc.*, 340 Md. 304, 309, 666 A.2d 1239, 1244 (1995) (citation and internal quotations omitted). *See also, Currier v. State Indus. Ins. System*, 956 P.2d 810, 114 Nev. 328 (1998); *Robinson v. Newberg*, 849 S.W.2d 532 (Ky.1993).

10. Nothing in this opinion should be read to limit, in any way, the other benefits a dependent might have as a result of the death of an injured worker, whether that death was related, or unrelated, to an occupational injury. The code describes what benefits are available in those cases:

> In case a personal injury, other than occupational pneumoconiosis or other occupational disease, suffered by an employee in the course of and resulting from his or her employment, causes death, and disability is continuous from date of such injury until date of death, or if death results from occupational pneumoconiosis or from any other occupational disease, the benefits shall be in the amounts and to the persons as follows:

> (a) If there be no dependents, the disbursements shall be limited to the expense provided for in sections three and four of this article.

> (b) If there be dependents as defined in subdivision (d) of this section, such dependents shall be paid for as long as their dependency shall continue in the same amount as was paid or would have been paid the deceased employee for total disability had he or she lived. The order of preference of payment and length of dependence shall be as follows: ....

> (e) If a person receiving permanent total disability benefits dies from a cause other than a disabling injury leaving any dependents as de-

## B. The Validity of Mr. Martin's Underlying Claim

Having decided the threshold question that Mrs. Martin may still be the beneficiary of any award that might have been owed Mr. Martin, we now must address the merits of Mr. Martin's underlying claim. The record indicates that Mr. Martin provided the medical report of a Dr. M.I. Ranavaya, who performed a pulmonary function test upon Mr. Martin. Based upon the results of the test, Dr. Ranavaya opined that Mr. Martin was permanently and totally disabled as a result of his occupational pneumoconiosis.

As is required, the Occupational Pneumoconiosis Board also examined Mr. Martin, and after that examination, the Occupational Pneumoconiosis Board concluded that: "[We] find sufficient evidence to justify a diagnosis of occupational pneumoconiosis with *no more* than the *50%* pulmonary functional impairment attributable to this disease previously found in [Mr. Martin's 1987 claim]." The Occupational Pneumoconiosis Board went on to state what evidence supported its finding:

The evidence upon which we base our findings is a history that this *56* year old *COAL MINER* has been exposed to a dust hazard for *27* years with sufficient exposure to have caused occupational pneumoconiosis or to have perceptible aggravated a pre-existing occupational pneumoconiosis.

The further evidence upon which we base our finding is physical examination of the [*sic* ] by the members of the Board, pulmonary function studies made for the Board and now a part of this record, and x-rays of the chest made by a member of the Board.

■ While this is all well and good, nowhere does the Occupational Pneumoconiosis Board discuss the evidence presented by Mr.

Martin that showed him to be permanently and totally disabled. Our law on this issue has been clear for some time:

When conflicting medical evidence is presented concerning the degree of impairment in an occupational pneumoconiosis claim, that medical evidence indicating the highest degree of impairment, which is not otherwise shown, through explicit findings of fact by the Occupational Pneumoconiosis Board, to be unreliable, incorrect, or clearly attributable to some other identifiable disease or illness, is presumed to accurately represent the level of pulmonary impairment attributable to occupational pneumoconiosis.

Syl. pt. 1, *Javins v. Workers' Compensation Comm'r*, 173 W.Va. 747, 320 S.E.2d 119 (1984). We have declared that the Occupational Pneumoconiosis Board must examine the claimant's evidence, and cannot simply ignore it because it does not precisely match the evidence produced by the Occupational Pneumoconiosis Board:

[O]n the one side we have a high regard for the Occupational Pneumoconiosis Board's professional competence in evaluating expert testimony, yet on the other side we have a rule of law, namely the liberality rule, which mandates that reputable evidence favorable to the claimant be considered and the claimant treated as generously as any reasonable view of the evidence would justify. In this regard the Occupational Pneumoconiosis Board, the Commissioner, and the Workmen's Compensation Appeal Board as finders of fact are in a different position from either a jury or a trial chancellor; they are not quite entitled to disbelieve evidence based exclusively upon their own subjective evaluation of the credibility of the witnesses.

fined in subdivision (d) of this section, an award shall be made to such dependents in an amount equal to one hundred four times the weekly benefit the worker was receiving at the time of his or her death and be paid either as a lump sum or in periodic payments, at the option of the dependent or dependents. Direct premium rating experience charges for the payment of such benefits granted as a result of a second injury award of permanent total dis-

ability shall not be made to the employee's employer. It is the intent of the Legislature that the amendments to this subsection enacted during the regular session of the Legislature in the year one thousand nine hundred ninety-nine be construed so as to make dependents eligible for benefits under this subsection retroactive to the second day of February, one thousand nine hundred ninety-five.
W. Va.Code § § 23–4–10 (1999).

*Persiani v. State Workmen's Compensation Commissioner,* 162 W.Va. 230, 236, 248 S.E.2d 844, 848 (1978). Justice Starcher elaborated on this point in a recent concurrence:

> In *Persiani v. SWCC,* 162 W.Va. 230, 248 S.E.2d 844 (1978) we specified that the rule of liberally interpreting evidence in favor of the claimant is to be applied in occupational pneumoconiosis claims. We described the liberality rule as one "which mandates that reputable evidence favorable to the claimant be considered and the claimant treated as generously as any reasonable view of the evidence would justify." 162 W.Va. at 236, 248 S.E.2d at 848 (1978).

*Persiani* presented the Court with the question of how the rule of liberality should be applied "when the claimant introduces expert testimony on disability to the Occupational Pneumoconiosis Board who, as experts themselves, disbelieve the claimant's evidence and find the evidence of the employer's examining experts more credible[.]" The question raised in *Persiani* is nearly identical to the issue in this case, where the OP Board similarly concluded that the employer's pulmonary function tests, which indicated that the appellant had no respiratory impairment, were "more reliable" than the OP Board's test results indicating a 15% impairment. This approach used by the OP Board in *Persiani* for interpreting evidence in pneumoconiosis claims was specifically rejected by this Court. We specified that the Division may not accept the OP Board's recommendation to "arbitrarily choose to disbelieve any competent medical testimony in its entirety or to exclude it from consideration altogether, absent credible evidence in the record that the suspect testimony is unreliable." Syllabus, *Persiani.*

*Thacker v. Workers' Compensation Div.,* 207 W.Va. 241, 245, 531 S.E.2d 66, 70 (1999) (per curiam)(footnote omitted).

We interpret the rule set forth in *Persiani* and *Javins* to be quite simple: if the parties to a workers' compensation claim introduce reliable, conflicting evidence about the existence of occupational pneumoconiosis, or reliable, conflicting evidence about the degree of respiratory impairment caused by or attributable to occupational pneumoconiosis, then the Division, the Office of Judges and the Appeal Board must award the claimant benefits based upon the reliable evidence that shows either the existence of occupational pneumoconiosis or the highest degree of impairment. The claimant must be given the benefit of all reasonable inferences the record will allow, and any conflicts in evidence must be resolved in favor of the claimant. *See, Thacker v. Workers' Compensation Div.,* 207 W.Va. at 250, 531 S.E.2d at 75 (Starcher, C.J., concurring).

In *Javins* and *Persiani,* we expressly made clear that the Division, the Office of Judges and the Appeal Board may only disregard evidence that is "unreliable." Whether evidence is unreliable is a legal determination to be made by the finder of fact, *i.e.,* the Division or the Office of Judges. In a workers' compensation claim, whether the evidence of a party is unreliable is a determination that must be made by an affirmative showing by the parties in the record, and such an affirmative showing can include the opinions of the members of the Occupational Pneumoconiosis Board.

Furthermore, the finder of fact may not rely upon "only probable or conjectural reasons or causes" as a basis for disregarding a party's evidence. *Pripich v. State Compensation Comm'r,* 112 W.Va. 540, 543, 166 S.E. 4, 5 (1932). In other words, the unsubstantiated opinion of an expert, including the members of the Occupational Pneumoconiosis Board, that a particular piece of evidence is "unreliable" is itself unacceptable. The expert opinion must be accompanied by specific, credible evidence or testimony that the suspect test result is unreliable.

In the instant case, we find no evidence in the record—from either the Occupational Pneumoconiosis Board or any other expert witness—to suggest that the claimant's medical report from Dr. Ranavaya was unreliable. Dr. Ranavaya's opinion was that the claimant was permanently, totally disabled as a result of his occupational pneumoconiosis. The Occupational Pneumoconiosis

Board's opinion was that the claimant had only 50% permanent partial disability attributable to his occupational pneumoconiosis. The parties introduced reliable, conflicting evidence about the degree of respiratory impairment caused by or attributable to occupational pneumoconiosis, and the Division, the Office of Judges and the Appeal Board should have awarded the claimant benefits based upon the reliable evidence that showed the highest degree of impairment.

We therefore find that the Office of Judges and the Workers' Compensation Appeal Board erred in not awarding Mr. Martin permanent total disability due to his occupational pneumoconiosis. We conclude that the Appeal Board's decision was clearly wrong, and the decision must be reversed.

## IV.

## CONCLUSION

For the reasons stated, the decision of the Workers' Compensation Appeal Board is reversed. This claim is remanded for entry of a permanent total disability award with an onset date of August 4, 1994, and for the payment to Mr. Martin's dependents of any resultant benefits Mr. Martin would have received up to the date of his death.

Reversed and remanded.

MAYNARD, Justice, dissenting.

(Filed Dec. 11, 2001)

The majority opinion has no basis in our law and violates the principles of *stare decisis*.

Because the workers' compensation system is a statutory creation, this Court should look to the applicable workers' compensation statute to decide issues like the instant one. "Workers' Compensation rights and resultant remedies are statutory and in order to ascertain the availability and scope of benefits, this Court looks to the plain meaning to ascertain the legislature's intention." *Wingrove v. Workers' Compensation Div.*, 208 W.Va. 80, 84, 538 S.E.2d 378, 382 (2000). "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v.*

*State Workmen's Compensation Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

The applicable statute at issue is W.Va. Code § 23–4–6(g) (1999). This Court recognized in *Wingrove* that "[a]ccording to W.Va. Code 23–4–6(g) [1999], the general rule is that an award of benefits during the lifetime of the claimant is necessary for payment of unpaid benefits to a claimant's dependents after his or her death." *Wingrove*, 208 W.Va. at 85, 538 S.E.2d at 383 (citation omitted). We made it quite clear in *Wingrove* that "[t]he plain meaning of the statute requires an award to be given during a claimant's lifetime for the payment of unpaid benefits to a claimant's dependents after his or her death." *Id.*

In the instant case, no award was given during the claimant's lifetime so that, according to the unambiguous rule set forth in *Wingrove*, there can be no payment of unpaid benefits to the claimant's dependents after his death. In this case, because the claimant died without ever having received an award, the claim was extinguished upon his death. The applicable statute and the settled law of this Court are clear. Therefore, this Court should apply the statute and our rule in *Wingrove* and find against the claimant.

However, the majority does not like the result mandated by application of the established law. Therefore, the majority chooses to ignore the plain terms of the statute and to overrule a unanimous opinion of this Court which was decided on July 12, 2000, a mere year and a half ago. I believe that this Court should be bound by the doctrine of *stare decisis* to follow *Wingrove*. The doctrine of *stare decisis* rests on the principle,

that law by which men are governed should be fixed, definite, and known, and that, when the law is declared by court of competent jurisdiction authorized to construe it, such declaration, in absence of palpable mistake or error, is itself evidence of the law until changed by competent authority.

*Booth v. Sims*, 193 W.Va. 323, 350 n. 14, 456 S.E.2d 167, 194 n. 14 (1995) (citation omitted). *Wingrove* is well reasoned, devoid of

palpable mistake or error, and the applicable governing statute has not changed since *Wingrove* was decided. Therefore, there is no sound reason to overrule *Wingrove*.

Furthermore, the Court's disposition of the claimant's permanent total disability claim and the new law set forth in syllabus point 7 are wrong. Although this Court regularly refers to *Javins v. Workers' Compensation Com'r*, 173 W.Va. 747, 320 S.E.2d 119 (1984) and *Persiani v. SWCC*, 162 W.Va. 230, 248 S.E.2d 844 (1978), these cases are no longer good law in light of the 1995 amendments to the workers' compensation statutes. According to W.Va.Code § 23-4-6a (1995), in part:

> If an employee is found to be permanently disabled due to occupational pneumoconiosis ... the percentage of permanent disability shall be determined by the degree of medical impairment that is found by the occupational pneumoconiosis board. The division shall enter an order setting forth the findings of the occupational pneumoconiosis board with regard to whether the claimant has occupational pneumoconiosis and the degree of medical impairment, if any, resulting therefrom. That order shall be the final decision of the division.... If such a decision is objected to, the office of judges shall affirm the decision of the occupational pneumoconiosis board made following hearing unless the decision is clearly wrong in view of the reliable, probative and substantial evidence on the whole record.

The dispositive question, therefore, is whether the Occupational Pneumoconiosis Board was clearly wrong in light of the reliable, probative and substantial evidence on the whole record. The answer is unequivocally no. Dr. Ranavaya's opinion that the claimant was permanently and totally disabled as a result of his occupational pneumoconiosis does not constitute reliable, probative, and substantial evidence that renders the Occupational Pneumoconiosis Board clearly wrong.

The majority opinion is another example of this Court's results-driven workers' compensation jurisprudence. First, the Court regularly abuses the applicable standards of review. Although the Court repeatedly asserts that it only disturbs the findings of the Workers' Compensation Appeal Board when these findings are clearly wrong, the Court, in fact, reviews *de novo* every workers' compensation appeal accepted by the Court and reverses the Board a significant percentage of the time.

Second, the Court routinely abrogates legislative mandates by resorting to the so called "rule of liberality" which was created *ex nihilo* by this Court. While arguably application of a liberality rule is warranted where the parties' evidence is evenly balanced, this Court regularly abuses the rule to find for the claimant where his or her evidence is grossly inadequate. For example, this Court will choose a chiropractor's percentage of impairment evaluation over the evaluations of five orthopedic surgeons based on the liberality rule.

According to the "Workers' Compensation Training Manual" promulgated by the Workers' Compensation Division, "[t]he Liberality Rule is something of which you should be aware. It is not something you should routinely resort to in justifying an award of benefits. In fact, citations to the rule should almost never be included in your decisions." Further, "[i]t is important to emphasize that the Liberality Rule is no substitute for proof of entitlement to workers' compensation benefits." This Court, however, routinely cites the liberality rule and uses it to justify its decisions in workers' compensation appeals.

By ignoring plain statutory language, disregarding standards of review, and abusing the liberality rule, this Court usually manages some way to find for claimants, often contrary to the reliable evidence. "It is not good to have respect of persons in judgment." [1]

In conclusion, I would have applied W.Va. Code § 23-4-6(g) (1999) and *Wingrove* to find that Mr. Martin's claim was extinguished by his death because he did not previously receive any favorable rulings. Accordingly, I dissent.

---

1. *Proverbs* 24:23, in part. (King James Version).