**STATE OF WEST VIRGINIA**

**FILED**

**November 12, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Charles E. Comas,**
**Claimant Below, Petitioner**

**v.) No. 24-290**          (JCN: 2023005626)
                      (ICA: NO. 23-ICA-466)

**Bass Pro Group, LLC,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Charles E. Comas appeals the March 25, 2024, memorandum decision of the Intermediate Court of Appeals (ICA).[1] The ICA affirmed the September 28, 2023, decision of the West Virginia Workers' Compensation Board of Review (BOR), which affirmed the order of the claim administrator denying authorization for a left knee arthroscopy. On appeal to this Court, petitioner argues that he sustained a medial meniscal tear of the left knee when he twisted his knee and fell at work and that the BOR erred in denying authorization for left knee arthroscopy to repair the work-related injury. Respondent Bass Pro Group, LLC, filed a timely response urging this Court to affirm the ICA's decision. Petitioner submitted a reply.

Upon our review, we reverse the decision of the ICA and remand the case to the BOR with directions for entry of an order consistent with our ruling herein.[2]

On September 5, 2022, petitioner injured his left knee after he slipped and fell on a wet concrete loading dock while at work. Petitioner immediately felt "a sharp, burning pain inside the knee," that he had never "felt . . . before in [his] life." He immediately reported the incident to his supervisor. Petitioner presented to the emergency department at Wheeling Hospital five days later where he "state[d] that pain has persisted without relief." X-rays showed the existence of mild degenerative joint disease but no fracture. Petitioner denied any previous history of injury to the left knee.

Petitioner was later seen by Ross Tennant, NP, in the Occupational Medicine Department at Wheeling Hospital. In the progress note from a September 15, 2022, visit, Mr. Tennant indicated

---

[1] *See Comas v. Bass Pro Group, LLC*, No. 23-ICA-466, 2024 WL 1270604 (W. Va. Ct. App. March 25, 2024) (memorandum decision).

[2] We find that a memorandum decision reversing the ICA is appropriate. *See* W. Va. R. App. P. 21. Petitioner is represented by Sandra K. Law, Esquire. Respondent is represented by Jane Ann Pancake, Esquire, and Jeffrey B. Brannon, Esquire.

1

that he "suspect[ed] [petitioner] may have a medial meniscus tear" and specifically noted that petitioner denied a prior history of difficulty with the injured knee. Petitioner was advised to elevate the left knee and apply ice, and he was placed on light-duty restrictions at work. Physical therapy was ordered and approved by the claim administrator.

During a follow-up visit with Mr. Tennant on September 29, 2022, Mr. Tennant noted that petitioner had begun physical therapy but continued to experience "significant discomfort to the medial aspect of his left knee," and that petitioner stated that "his left knee is unstable at times." Accordingly, Mr. Tennant requested authorization for a diagnostic MRI of the left knee. Petitioner was directed to continue with physical therapy and light-duty restrictions at work.

At an October 13, 2022, visit with Mr. Tennant, it was noted that "there has been no improvement pain [sic] discomfort to the medial aspect of [petitioner's] left knee with treatment from physical therapy. . . . [Petitioner] reports increased pain whenever he twists or turns suddenly." Petitioner continued with light-duty restrictions at work and physical therapy.

The claim administrator authorized an MRI of the left knee, and an MRI was performed on October 20, 2022. The MRI revealed "[d]egenerative tearing of the posterior horn of medial meniscus with associated mild cartilage loss and osseous edema." Mr. Tennant requested authorization for an orthopedic consultation.

In separate orders dated October 26, 2022, the claim administrator held petitioner's claim compensable for left knee sprain and authorized an orthopedic consultation with Dr. Jeffrey Abbott.

Petitioner was seen by Dr. Abbott on November 11, 2022. X-rays of petitioner's left knee were performed and, according to Dr. Abbott's notes, the results showed mild degenerative changes. Dr. Abbott diagnosed petitioner with an acute medial meniscus tear of the left knee and osteoarthritis of the left knee, as shown by the MRI. Dr. Abbott requested authorization for left knee arthroscopy.

The claim administrator requested a review of petitioner's medical records and opinion of petitioner's claim from Dr. David Soulsby, an orthopedic surgeon. In a report dated December 23, 2022, Dr. Soulsby opined that the osteoarthritis in petitioner's left knee preexisted petitioner's work injury and identified "[t]he question [a]s whether there is a reasonable probability that degenerative osteoarthritis has caused a pre-existing tear of the medial meniscus." Dr. Soulsby's report concluded, based upon the MRI results and certain medical literature, that

> there is a reasonable medical probability that [petitioner] had pre-existing osteoarthritis and a pre-existing degenerative meniscus tear in his left knee. These conditions are not related to the work incident. It is possible that the incident in question may have caused temporary exacerbation of the pre-existing condition.
>
> 1. Need to address request for surgery – related to WC v. degenerative.
>
> Answer: In my opinion, although the recommended surgery is reasonable, and necessary for the stated diagnosis, this is not a work-related condition. Because of pre-existing osteoarthritis and

2

degenerative meniscal tearing, there is a reasonable certainty that [petitioner] would have developed symptoms at some point in the near future regardless of the work incident.

By order entered December 28, 2022, the claim administrator denied petitioner's request for authorization of left knee arthroscopy based upon Dr. Soulsby's report.[3]

On January 11, 2023, petitioner, self-represented, protested the claim administrator's order denying authorization for left knee arthroscopy, contending that the "meniscal tear . . . occurred during a work related accident. The finding of DJD [degenerative joint disease] is secondary to the meniscal tear. The meniscal tear has caused [petitioner] pain and discomfort." Petitioner submitted the MRI report of his left knee and requested that left knee arthroscopic surgery be authorized "to alleviate the pain of the meniscal tear."

In a deposition taken on May 18, 2023, petitioner testified that, prior to the work incident on September 5, 2022, he never had any "problems," "symptoms," or "pain" in his left knee, but since the injury, he has had constant pain and swelling.

By order entered September 28, 2023, the BOR affirmed the claim administrator order denying authorization for left knee arthroscopy. Without addressing whether the meniscal tear was related to petitioner's work-related injury and petitioner's unrefuted statements that he had no history of knee pain or injury prior to the workplace incident, the BOR stated only that "the compensable condition of the claim is left knee sprain and per W. Va. C.S.R. § 85-20-43b, surgery is an inappropriate treatment for knee sprain. It is determined that the requested treatment is not medically related and reasonably required for the compensable injury of left knee sprain."

Petitioner appealed to the ICA, which affirmed the BOR's order. This appeal followed.

On appeal, we review questions of law de novo and accord deference to the findings of fact made by the BOR unless the findings are clearly wrong. *See* Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

In syllabus point five of *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), we held:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

---

[3] Petitioner re-injured his left knee at work on January 8, 2023. He presented to the emergency department at Wheeling Hospital where he reported "dull throbbing" pain in the left knee.

Petitioner argues that syllabus point five of *Moore* applies. Conceding that he has degenerative joint disease of the left knee and, for the sake of argument, that his medial meniscus tear of the left knee preexisted his workplace injury, petitioner contends that the unrefuted evidence shows that the meniscus tear was asymptomatic until he fell and twisted his knee at work and since then, he has experienced continuous pain and swelling despite undergoing conservative treatments such as application of ice and physical therapy. Petitioner argues that medial meniscus tear of the left knee should be included as a compensable component of his claim, as dictated by *Moore*, and, therefore, his request for left knee arthroscopy should have been granted. To the extent respondent argues, and the decisions of the BOR and ICA suggest, that arthroscopic surgery was properly denied because petitioner failed to formally request that medial meniscus tear of the left knee be added as a compensable component to the claim, petitioner contends that such a limited view of the record serves to unfairly thwart his right to medical treatment for a workplace injury based upon a technicality. We agree.

The record shows that beginning with petitioner's visit with Mr. Tennant shortly after the workplace incident, it was suspected that petitioner had a medial meniscus tear of the left knee. Conservative treatments of ice, elevation, and physical therapy were ordered, as well as light-duty restrictions at work.[4] West Virginia Code of State Rules § 85-20-42.1, regarding general treatment guidelines for "injuries to the knee," recognizes that "[t]he vast majority of knee injuries result from direct trauma to the joint or are caused by torsional or angulatory forces" and "vary in severity . . . .This guideline is designed to guide the practitioner in the appropriate management of these injuries and to establish a logical sequence for the diagnostic evaluation and treatment of the more complex injuries." This rule specifically provides that "knee injuries should be referred for orthopedic consultation and/or treatment" where there is "failure of a presumed knee sprain to show progressive resolution and respond to appropriate conservative treatment in a period of three (3) weeks" and "[a] presumed diagnosis of a meniscal injury." *Id.* § 85-20-42.1.a and -42.1.f.[5] Further, Rule § 85-40-44.2.c provides that an "appropriate diagnostic test[]" for a meniscal injury is "MRI." Indeed, consistent with these rules, when the prescribed conservative treatments for petitioner's left knee injury proved unsuccessful—as petitioner continued to suffer significant discomfort, pain, swelling, and instability of the left knee—the claim administrator authorized a diagnostic MRI of the left knee and an orthopedic consultation with Dr. Abbott.[6]

---

[4] *See* W. Va. Code St. R. § 85-20-43 (regarding treatment guidelines for knee sprains, including "application of ice," "temporary partial restriction of weight bearing," and "rehabilitative procedures").

[5] *See also id*. § 85-20-44.1 ("The mechanism of [meniscal] injury is similar to that for knee sprains but symptoms of pain and swelling fail to resolve in the anticipated period of time and the symptoms frequently include a sensation of 'catching or giving away' of the joint and a history of locking of the joint may be elicited.").

[6] Notably, the claim administrator held petitioner's claim compensable for left knee sprain on the same date it also authorized an orthopedic consultation based upon a presumed diagnosis of a meniscal injury to petitioner's left knee. *See id.* § 85-20-42.1.f.

4

Dr. Abbott subsequently confirmed that petitioner had sustained a medial meniscal tear of the left knee, which he diagnosed as "acute." Consistent with Rule § 85-20-44.3.b.1, Dr. Abbott requested authorization for left knee arthroscopic surgery.[7] However, based upon Dr. Soulsby's opinion that "[b]ecause of pre-existing osteoarthritis and degenerative meniscal tearing, there is a reasonable certainty that [petitioner] would have developed symptoms at some point in the near future regardless of the work incident," and his conclusion that petitioner's left knee meniscal tear "is not a work-related condition," the claim administrator denied the request for left knee arthroscopy.

By requesting that Dr. Soulsby opine as to "whether there is a reasonable probability that degenerative osteoarthritis has caused a pre-existing tear of the medial meniscus," and then denying left knee arthroscopy based upon Dr. Soulsby's report, the claim administrator clearly treated Dr. Abbott's request for authorization of left knee arthroscopy as a request to add medial meniscus tear of the left knee as a compensable component of petitioner's claim. Stated another way, if the claim administrator had not treated the request for arthroscopic surgery as a request to update the claim, it would have been wholly unnecessary to seek Dr. Soulsby's opinion specifically on whether petitioner's meniscal tear was caused by his degenerative osteoarthritis or was related to his workplace injury; otherwise, the claim administrator would have needed only to follow Rule § 42-20-43.2.b.1, which clearly provides that "surgery" is an "[i]nappropriate treatment" for "knee sprains."

Indeed, the BOR went on to apply Rule § 42-20-43.2.b.1 and affirm the claim administrator's order because "the compensable condition of the claim is left knee sprain and . . . surgery is an inappropriate treatment for knee sprain." *Id.* However, in so ruling, the BOR conspicuously ignored (1) that the claim administrator treated the request for left knee arthroscopy as an informal request to hold the meniscal tear as compensable and (2) that our holding in *Moore* required the BOR to consider that the unrefuted evidence showed that prior to the workplace injury, the meniscal tear of the left knee was asymptomatic, and following the injury, petitioner experienced continuous pain, swelling, and discomfort in the left knee. 247 W. Va. at 294, 879 S.E.2d at 781, syl. pt. 5. We can only infer from the BOR's order that it refused to consider the issue under *Moore* because petitioner, who was then self-represented, failed to *formally* request that medial meniscus tear of the left knee be added as a compensable component of his claim. Given the unique facts and circumstances described herein, this was error.[8] This Court has cautioned that such a

---

[7] *See id.* (providing that "[t]he appropriate treatment" for meniscal injuries is "[o]utpatient/operative treatment" including "arthroscopic meniscectomy and/or arthroscopic meniscal repair[.]").

[8] *See Best Buy v. Parrish*, No. 15-1153, 2016 WL 7105264, at *2 (W. Va. Dec. 6, 2016) (memorandum decision) (affirming addition of complex regional pain syndrome as a compensable condition where "[t]he claim administrator treated complex regional pain syndrome as a compensable condition as evidenced by the authorization and payment for medical treatment related to the condition, even though it does not appear that a formal request to add the condition as compensable was ever made.")

ruling elevates form over substance in violation of West Virginia Code § 23-1-1(b) (2007), which provides that it is the "intent of the Legislature that this chapter be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers[,] . . . and workers' compensation cases shall be decided on their merits[.]"

*Moore*, 247 W. Va. at 299, 879 S.E.2d at 786.[9]

Based upon the foregoing, we reverse the ICA decision affirming the order of the BOR and remand to the BOR with directions to proceed with this case in accordance with our decision in *Moore*.

Reversed and Remanded, with directions.

**ISSUED:** November 12, 2025

**CONCURRED IN BY:**
Chief Justice William R. Wooton
Justice Charles S. Trump IV
Senior Status Justice John A. Hutchison

**Dissenting:**
Justice C. Haley Bunn
Justice Thomas H. Ewing

Ewing, Justice, dissenting, joined by Bunn, Justice.

The petitioner, Charles E. Comas, fell at work. The claim administrator informed the petitioner that his claim was compensable for "left knee sprain." The petitioner did not protest that order. Later, a physician asked the claim administrator to authorize "left knee arthroscopy." The claim administrator denied that request, and the petitioner protested the denial. The Board of Review ("BOR") affirmed the denial because "[t]he compensable condition of the claim is left knee sprain and per W. Va. C.S.R. § 85-20-43b, surgery is an inappropriate treatment for knee sprain." That conclusion is neither the product of a clearly erroneous factual finding nor an error of law. Therefore, I would affirm the decision of the Intermediate Court of Appeals affirming the BOR, and I respectfully dissent.

---

[9] *See Martin v. Workers Comp. Div.*, 210 W. Va. 270, 275, 557 S.E.2d 324, 329 (2001) ("Although the rules and regulations governing the workers' compensation system in this state are necessarily detailed and complex, we must be careful to prevent those deserving of compensation from being thwarted by technicalities or procedural niceties[.]").

The petitioner's chief complaint on appeal is that the BOR failed to apply Syllabus Point 5 of *Moore v. ICG Tygart Valley, LLC*, to find that medial meniscus tear (left knee) is a compensable injury. *Id.*, 247 W. Va. 292, 879 S.E.2d 779, 781 (2022). The respondent, Bass Pro Group, LLC, contends that Syllabus Point 5 of *Moore* is not applicable because the petitioner never requested to add a diagnosis of medial meniscus tear (left knee) to the claim. The majority's reversal of the ICA "conspicuously ignores" the statutory deference this Court owes the BOR pursuant to West Virgina Code § 23-5-12a(b). *See* Syl. Pt. 3, in part, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528, 530 (2024) (holding that Court is "bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed *de novo*, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong.").

The majority justifies the reversal on two grounds. First, it picks apart the appendix record and engages in an "if/then" colloquy to conclude that the claim administrator must have treated Dr. Abbott's request for left-knee arthroscopy as an "informal request" to update the petitioner's claim—an argument the petitioner does not even advance. West Virginia Code of State Rules § 85-20-6 (2006) states that "[t]he initial diagnosis . . . often requires updating based on diagnostic tests and clinical objective findings," and that "[c]hanges, additions, and revisions of the injured worker's condition must be reported using the applicable . . . private carrier . . . form[.]" The majority disregards section 85-20-6 and assumes the role of factfinder, despite pointing to no clearly erroneous findings by the BOR. *See Duff*, 250 W. Va. at 510, 905 S.E.2d at 528, syl. pt. 3 (holding that "findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong"). Allowing claimants to bypass this mandatory procedure permits them to request treatment unrelated to their compensable diagnosis, leaving claim administrators to discern whether a claimant has requested unrelated medical treatment that is properly denied or is implicitly requesting the addition of some unidentified diagnosis and allegedly related treatment. The governing regulations require no such guesswork of the claim administrator and plainly places the burden of identifying requested compensable diagnoses on the claimant.

Second, citing *Moore*, the majority faults the BOR for "elevat[ing] form over substance" by refusing to consider whether the medial meniscus tear is a compensable preexisting injury based on the "informal request" to update the claim. *Moore* does not go nearly so far, and the majority provides no reasonable basis to extend that case to the circumstances presented here. In that case, the Office of Judges refused to allow Mr. Moore to add cervical radiculopathy to his claim because the update form submitted by the physician only included a request to add "C5-6 spondylosis and C6 radiculopathy (diagnosis code M47.22)[.]" *Moore*, 247 W. Va. at 297, 879 S.E.2d at 784. But, as this Court pointed out, "on [the update] form, [the physician] referred to his office notes of May 8, 2018, and August 9, 2018, where he also listed the diagnosis of C6 cervical radiculopathy (diagnosis code M54.12)." *Id.* at 296, 879 S.E.2d at 783. *Moore*'s reference to "form over substance" was based on the failure of the Office of Judges to consider treatment notes referenced on the face of the update form. Unlike in *Moore*, the petitioner here took no steps to request that his meniscal tear be added as a diagnosis in his claim, and in fact, there is no physician who opined that the tear was the result of the compensable injury. Rather, that is a leap that the majority improperly makes on its own based on the claim administrator's approval of an MRI for the petitioner's knee. In fact, in denying the request for surgical repair, the claim administrator and the BOR reasonably relied on Dr. Soulsby's conclusion to the contrary that the petitioner's

meniscal tear "is not a work-related condition" consistent with his MRI that described his meniscal tear as degenerative. Based on these obvious factual distinctions, *Moore* does not provide an avenue for this Court to push the BOR's findings—and the deference they are owed—to the side. *See Lucas v. Blue Creek Mining, LLC*, No. 21-0655, 2023 WL 2782865 (W. Va. Apr. 5, 2023) (memorandum decision) (claimant was not entitled to 1% permanent partial disability impairment for surgery attributable to medial meniscus tear where the only compensable condition in the claim was right knee sprain, and surgery is not appropriate treatment for right knee sprain). Accordingly, I dissent from the majority decision to reverse the BOR's decision and remand this case for further proceedings in accordance with *Moore*. I am authorized to state that Justice Bunn joins in this dissent.